Anthony Randolph **FERREL**, Appellant,

v.

**The STATE of Texas.**

No. 1195–00.

Court of Criminal Appeals of Texas.

Sept. 12, 2001.

---

1. *Jones v. State,* 942 S.W.2d 1, 2 n. 1 (Tex.Cr. App.1997).

2. *Ibid.*

3. *See* Tex.R.App. P. 33.1(a)(1); Tex.R. Evid. 103(a)(1).

4. *See* Tex.R.App. P. 67.1.

5. *See Rachal v. State,,* 917 S.W.2d 799, 809 (Tex.Cr.App.1996); *Hardesty v. State,* 667 S.W.2d 130, 135 n. 6 (Tex.Cr.App.1984).

Don D. Becker, Houston, for Appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, State's Attorney, Austin, for the State.

## OPINION

KEASLER, J., delivered the opinion of the Court, which KELLER, P.J., and MEYERS, WOMACK, and HERVEY, JJ., joined.

During an altercation at Cornbread's pool hall and bar, Anthony Randolph Ferrel hit William Patrick McManus in the mouth with a full beer bottle. McManus fell straight back, hit his head on the floor, and died at the scene. A jury convicted Ferrel of aggravated assault and sentenced him to six years confinement and a $2,500 fine. We are asked to decide whether Ferrel was entitled to jury instructions on self-defense and the lesser-included offense of misdemeanor assault. We find that he was not entitled to either.

### Factual History

On August 26, 1996, McManus met his friend and former boss, Randy Glover, at Cornbread's in Houston, Texas. They had a few drinks and then left to meet some friends for dinner at Ruth's Chris Steak House. After dinner, McManus, Glover and Glover's girlfriend, Melba Jackson, went back to Cornbread's.

When they arrived at Cornbread's, McManus went up to the bar to talk to two of the bartenders, Jessica Jones and Misty Smith, while Glover and Jackson went to play darts. According to Glover, at that time McManus had drunk about ten drinks of Jack Daniels whiskey mixed with water. Glover ordered McManus another Jack Daniels and water once they returned to Cornbread's but McManus exchanged it for a Coke. After about 30 to 40 minutes, McManus, Glover, and Jackson decided to leave. They walked out of the bar and when Glover opened the door for Jackson, he noticed that McManus was no longer there. McManus had gone back inside and had started talking to Jones who was behind the bar. According to Jones, McManus was talking to her over the cash register and Ferrel was sitting, facing the bar to McManus's left. There was testimony from one of the witnesses that McManus was close enough to Ferrel's side to possibly rub against him. By this point, Ferrel had consumed about four beers and a shot of peppermint schnapps over approximately a four hour period.

Jones told McManus that "Randy" was outside looking for him. Ferrel, who also is referred to as "Randy," said, "no I am not." According to Ferrel's testimony, McManus then began to walk around Ferrel. Ferrel turned around on his barstool to face McManus. Ferrel was now sitting with his back to the bar rail. McManus told Ferrel that the food and service at Ferrel's father's restaurant, which used to be in the same strip center as Cornbread's, "sucked." Ferrel also testified that McManus made other statements such as, "you and your whore mother" and called Ferrel a "mother fucker." This made Ferrel "furious" and he told McManus, "[J]ust shut the fuck up. [L]eave me alone. I don't want no part of this." At some point Glover came in to get McManus and approached McManus and Ferrel. Ferrel

pushed his barstool to the side and stood up against the bar rail. Ferrel testified that McManus was angry and very close to him. McManus said, "Let's take this outside." Ferrel responded, "No, we are not." Ferrel (5′9″ and 170 lbs.), then fearing that McManus (5′8″ and 218 lbs.) and Glover (5′10″ and 240 lbs.) were going to "jump" him, took a full beer bottle, swung, and hit McManus in the face. Ferrel testified McManus was "right in front of me and he looked like he was coming forward, and I wasn't going to take a chance." He also stated that McManus was standing away from the bar with his hands down. Ferrel never testified that McManus touched him.

When asked why he hit McManus, Ferrel said, "[b]ecause it looked like he was coming to threaten me and stuff, and I just couldn't accept that." In his statement to the police after the incident, Ferrel stated that he turned to face McManus, in response to McManus's comments about Ferrel's mother, and the bottle just somehow accidently hit McManus in the mouth. At trial, Ferrel denied that he hit McManus by accident, but rather that he hit McManus to get away from him.

The impact of the hit caused McManus to fall straight back and hit his head on the floor. He died at the scene as a result of his injuries. His external injuries included a one-and-one-half inch laceration to the back of his head, a one-and-one-half inch by one-and-one-fourth inch abrasion surrounding the laceration, six loose teeth (two fell out later), one fractured tooth, a one-half inch laceration to the upper lip, and two lacerations to his bottom lip. His internal injuries included severe hemorrhaging and bruising of the brain. The doctor who performed the autopsy concluded that either the blow to the face or the blow to the back of the head could have been sufficient to cause the hemor-

rhaging which caused McManus to die. Ferrel's expert medical witness indicated that the cause of death was solely due to the blow to the back of the head, complicated by alcohol intoxication.

Several witnesses testified that after the incident, Ferrel was making comments such as: "I have seen this charge before. I will get off with just an assault," "[T]hat should teach him," "[G]et up so I can hit you again," and "I don't care if he dies. I would do it again. [H]e shouldn't have said what he did." Ferrel denied making these comments. He testified that he only said that McManus should not have been making comments about Ferrel's mother. After this incident, Ferrel stayed at the bar, called his sister to tell her that he was going to jail, and waited for the police to arrive.

### Procedural History

A jury convicted Ferrel of aggravated assault. He appealed his conviction to the Court of Appeals, arguing that the trial judge erred in denying his requests for jury instructions on self-defense, apparent danger, and the lesser-included offense of misdemeanor assault. The Court of Appeals held that the evidence raised the issues of misdemeanor assault and self-defense, and reversed and remanded to the trial court for a new trial.[1] The appellate court declined to address the issue of apparent danger because "it was not necessary to the disposition of this appeal." [2] We granted the State's petition for discretionary review.

### Lesser–Included Offense

In the State's first ground for review, it argues that the Court of Appeals erred in finding that Ferrel was entitled to a jury instruction on the lesser-included offense of misdemeanor assault. A defendant is entitled to an instruction on a lesser-included offense if: (1) proof of the charged offense includes the proof required to establish the lesser-included offense, and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.[3] Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.[4] It is not disputed in this case that misdemeanor assault is a lesser-included offense of aggravated assault. The State argues that Ferrel did not meet the second prong.

A person commits the offense of misdemeanor assault if he intentionally, knowingly, or recklessly causes bodily injury to another.[5] A person commits the offense of aggravated assault if he commits misdemeanor assault and either: (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault.[6] Therefore, in order to be entitled to an instruction on misdemeanor assault, there must have been some evidence that McManus did not suffer serious bodily injury and that Ferrel did not use or exhibit a deadly weapon. The Court of Appeals held that the evi-

**1.** *Ferrel v. State,* 16 S.W.3d 861 (Tex.App.—Houston [14th Dist.] 2000).

**2.** *Id.* at 865.

**3.** *Moore v. State,* 999 S.W.2d 385, 403–04 (Tex.Crim.App.1999); *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim.App.1994) (citing *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 919,

114 S.Ct. 313, 126 L.Ed.2d 260 (1993) and *Royster v. State,* 622 S.W.2d 442, 446–47 (Tex.Crim.App.1981)).

**4.** *Bignall,* 887 S.W.2d at 23.

**5.** Tex. Pen.Code Ann. § 22.01(a)(1).

**6.** Tex. Pen.Code Ann. § 22.02(a).

dence warranted a misdemeanor assault instruction.

"Serious bodily injury" is any injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." [7] With respect to its conclusion that there was evidence that McManus did not suffer serious bodily injury, the Court of Appeals stated:

> The record shows appellant's expert testified the complainant did not in fact suffer a serious bodily injury by the blow from the bottle. The expert opined the complainant died as a result of hitting his head on the floor, his heavy alcohol consumption, and other factors.[8]

This analysis is factually and legally incorrect.

First, Ferrel's expert never testified that McManus did not suffer serious bodily injury as a result of the direct hit from the beer bottle. Instead, during cross-examination, Ferrel's expert testified to the following:

> STATE: Let me ask you this, based on your many years of experience have you ever had occasion to have a beer bottle that was used to cause death or serious bodily injury?
>
> EXPERT: Yes.
>
> STATE: And in your opinion ... this Budweiser bottle type, typically speaking, if it had some alcohol in it or even if it didn't, if you were hit or an individual was hypothetically hit across the mouth in the area that is consistent with the way in which Mr. McManus was hit and

is hit with sufficient force, clearly that causes bodily injury?

> EXPERT: Certainly. No question about that.
>
> STATE: And also, clearly based upon the amount of force could cause serious bodily injury and, in fact, did in this case?
>
> EXPERT: I would agree with that, with the lacerations being visible, serious bodily injury. The teeth are probably going to firm up and not be a problem, but if you are scarred, in my view on the face of somebody, particularly if it's a woman, I would consider that serious bodily injury.

Following this cross-examination, Ferrel did not challenge the expert's conclusion that there was serious bodily injury and asked no further questions.

Secondly, as noted in the dissenting opinion below, the Court of Appeals' majority opinion focuses solely on the impact from the blow of the beer bottle—ignoring the fact that because of that blow McManus fell back, hit his head on the ground, and died.[9] But "a person is criminally responsible for the result if it would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor was clearly insufficient." [10] The evidence reflects that McManus would not have died but for the actions of Ferrel. Additionally, the evidence did not show that McManus's intoxication alone was clearly sufficient to cause him to fall backwards, hit his head on the floor, and die. Nor did the evidence show that hitting McManus with a full beer bottle was clearly insufficient to cause Mc-

---

7. TEX. PEN.CODE ANN. § 1.07(a)(46).

8. *Ferrel,* 16 S.W.3d at 864.

9. *Id.* at 869 (Edelman, J. dissenting).

10. TEX. PEN.CODE ANN. § 6.04(a).

Manus's fatal fall. Consequently, Ferrel is criminally responsible for McManus's death.

Because it is unquestionable that Mc-Manus suffered serious bodily injury at the hands of Ferrel, we need not address whether there was evidence that Ferrel did not use or exhibit a deadly weapon. We find that a reasonable jury could not have found Ferrel guilty only of misdemeanor assault and, thus, the court did not err in refusing to give a lesser-included offense instruction.

### Self–Defense

In its third ground for review, the State argues that even if the trial court should have instructed the jurors on the lesser-included offense of misdemeanor assault, the Court of Appeals erred in holding that Ferrel was entitled to a jury instruction on self-defense because there was no evidence that McManus used or attempted to use unlawful deadly force. Because we have found that Ferrel was not entitled to a misdemeanor assault instruction, we need not reach this ground.

The State argues in its second ground for review that the Court of Appeals erred in holding that Ferrel was entitled to a jury instruction on self-defense because there was no evidence that McManus used or attempted to use unlawful deadly force. The State is essentially arguing that Ferrel was not entitled to a self-defense instruction under § 9.32(a) of the Penal Code. Under this section, a person is justified in using deadly force against another if he would be justified in using force under Section 9.31, if a reasonable person

in the actor's situation would not have retreated, and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force.

But the Court of Appeals did not hold that Ferrel was entitled to a § 9.32(a) self-defense instruction. The Court of Appeals held that Ferrel was entitled to a self-defense instruction under § 9.31(a), using non-deadly force, because there was evidence that Ferrel did not use deadly force.[11] Section 9.31(a) of the Penal Code provides that a person is justified in using non-deadly force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

■ A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense.[12] On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue.[13] In this case, we must decide whether there was evidence that Ferrel did not use deadly force.

■ Deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily

**11.** *Ferrel,* 16 S.W.3d at 865.

**12.** *Granger v. State,* 3 S.W.3d 36, 38 (Tex. Crim.App.1999); *Hamel v. State,* 916 S.W.2d 491, 493 (Tex.Crim.App.1996).

**13.** *Granger,* 3 S.W.3d at 38; *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App.1984); *Barree v. State,* 621 S.W.2d 776, 779 (Tex. Crim.App.1981); *Rodriquez v. State,* 544 S.W.2d 382, 383 (Tex.Crim.App.1976); *Dominguez v. State,* 506 S.W.2d 880, 882 (Tex.Cr. App.1974).

injury."[14] For there to be evidence that Ferrel did not use deadly force, there must have been evidence that the beer bottle was not capable of causing death or serious bodily injury in the manner of its use or intended use. The Court of Appeals held that Ferrel was entitled to a § 9.31(a) self-defense instruction based on the faulty assumption that there was evidence that the beer bottle did not cause serious bodily injury and that, in the manner the bottle was used, it was incapable of causing serious bodily injury.[15] Because we have found that the actual blow of the bottle indisputably caused serious bodily injury to McManus, Ferrel by definition used deadly force.[16] Hence, a § 9.31(a) self-defense instruction is not applicable and the trial court did not err in refusing to give one.

### Conclusion

Under § 6.04, Ferrel was responsible for McManus's death. Because McManus's death unequivocally constitutes "serious bodily injury," the trial court did not err in denying Ferrel's request for a lesser-included offense instruction on misdemeanor assault. And because Ferrel used "deadly force," the trial court did not err in refusing a self-defense instruction under § 9.31(a). We, therefore, reverse the Court of Appeals' judgment and remand for proceedings consistent with this opinion.

HOLCOMB, J., delivered the following opinion, in which PRICE and JOHNSON, JJ., joined.

HOLCOMB, J., concurring, in which PRICE and JOHNSON, JJ., join.

The majority holds that the Fourteenth Court of Appeals erred in holding that appellant, Anthony Randolph Ferrel, was entitled to a jury instruction on non-deadly force self-defense under Texas Penal Code § 9.31(a). I disagree.

A defendant in a criminal prosecution has the right to a jury instruction on any defensive issue that is raised by the evidence. *Granger v. State,* 3 S.W.3d 36, 38 (Tex.Crim.App.1999). A defensive issue is "raised by the evidence" if there is sufficient evidence to permit a reasonable jury to find in the defendant's favor on the issue. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); 23A C.J.S. *Criminal Law* § 1315 (1989).

At the guilt/innocence stage of appellant's trial, the State presented evidence that on August 26, 1996, appellant assaulted William Patrick McManus in a pool hall in Harris County. Appellant took the stand in rebuttal, however, and testified that he struck McManus only after it appeared to him that McManus was about to attack him. According to appellant, he and McManus had an unpleasant exchange of words and then McManus, who was "really angry," "came at" him. Appellant testified further that he was unable to retreat and that he struck McManus only "to get him away." Appellant denied any intent to harm McManus.

In addition, there was evidence that McManus was highly intoxicated at the time of the incident; that he was "really close to [appellant], being [bending?] over him" at the time of the incident; and that he was much larger than appellant. There was also expert medical testimony that as a direct consequence of being struck by the bottle, McManus suffered three minor lacerations to his lips, one fractured tooth,

---

**14.** TEX. PEN.CODE ANN. § 9.01.

**15.** *Ferrel,* 16 S.W.3d at 865.

**16.** *See Hayes v. State,* 728 S.W.2d 804, 808 (Tex.Crim.App.1987).

and six loose teeth; that the loose teeth would eventually "firm up"; and that the blow by the beer bottle was "in the wrong place to generate a significant head injury." [1]

Given this evidence, a reasonable jury could have found (1) that the blow by the beer bottle did not directly cause "serious bodily injury" to McManus, as that term is defined by statute [2]; (2) that appellant in fact used *non-deadly force* against McManus; and (3) that appellant *was justified in doing so* because he reasonably believed the force was immediately necessary to protect himself against McManus' use of unlawful force. [3] Thus, the trial court erred in not giving a non-deadly force self-defense instruction to the jury. However, the trial court's error was harmless, because the jury would not have found in appellant's favor even if the trial court had given the instruction. The record reflects that the jury found that appellant used a deadly weapon (the beer bottle) in his assault on McManus. See Tex. Pen. Code § 1.07(a)(17)(B). [4] In other words, the jury, after hearing and considering all of the evidence, found, in effect, that appellant used *deadly force* against McManus. See Tex. Penal Code § 9.01(3). [5] Therefore, the jury would not have found for

appellant on the issue of non-deadly force self-defense even if it had had that option.

With these comments, I join the judgment, but not the opinion, of the Court.

---

1. The majority makes much of the fact that appellant's medical expert witness, Dr. Robert C. Bux, testified that the lacerations to McManus' lips would constitute "serious bodily injury" if they caused scarring. Dr. Bux was never given the statutory definition of "serious bodily injury," however, so his testimony would not have prevented a reasonable jury from finding that the blow by the beer bottle did *not* directly cause serious bodily injury to McManus.

2. Texas Penal Code § 1.07(a)(46) defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or any protracted loss or impairment of the function of any bodily member or organ."

3. The court of appeals did not hold that appellant was entitled to a deadly-force self-defense instruction under Texas Penal Code § 9.32(a), so I do not reach that question.

4. Texas Penal Code § 1.07(a)(17)(B) defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

5. Texas Penal Code § 9.01(3) defines "deadly force" as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury."