IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0012-06






JOHN LOWELL BUFKIN, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


FORT BEND COUNTY





 Keller, P.J., delivered the opinion of the Court in which MEYERS,
PRICE, HOLCOMB, and COCHRAN, JJ., joined. JOHNSON, J., concurred in the
result. HERVEY, J., dissented. WOMACK and KEASLER, JJ., did not participate.


 Our "on or about" jurisprudence recognizes that it is often impractical to require an
indictment to specify (or the State to prove) the exact time that a crime occurred. (1) But in granting 
the State leeway regarding the time the offense occurred, that jurisprudence has created some
subsidiary issues that we are occasionally called upon to address. Most commonly, we have been
called upon to address how to handle what are clearly multiple instances of conduct that each appear
to satisfy the indictment's allegations. (2) The present case involves a somewhat different scenario:
how to determine whether the conduct depicted by the respective parties describes multiple instances
of conduct or only one instance of conduct. Whether the defendant in this case was entitled to a
defensive instruction on consent depends upon whether or not the evidence supporting that
instruction related to an instance of conduct upon which the State relied for conviction or to a
different instance of conduct that simply happened to also conform to the indictment's allegations. 
We conclude that the defendant's evidence related to an instance of conduct upon which the State
relied for conviction, and as a result, we affirm the judgment of the court of appeals. 

I. BACKGROUND


A. Trial


 Appellant was charged by information with family-violence assault. (3) The information
alleged that the assault occurred "on or about August 9, 2003," and specified in separate paragraphs
two different factual methods of committing the assault:

Paragraph A.



[The defendant did] intentionally, knowingly, or recklessly cause bodily injury to
Shelby Hooper by striking her with the defendant's hand.




Paragraph B.



[The defendant did] intentionally, knowingly, or recklessly cause bodily injury to
Shelby Hooper by biting her.

 

 At trial, the State introduced evidence that the police were dispatched to a hotel room that
had recently been the scene of an altercation between appellant and Hooper. Hysterical and crying,
Hooper told the officers that appellant had struck her with his fists and bitten her. Consistent with
Hooper's statements, officers observed a cut on her lip and bite marks on her back and buttocks. 
After admitting, during questioning, that he had hit Hooper in the head with a closed fist, appellant 
was arrested.

 Hooper testified for the defense. She stated that she had provided the police with a
misleading picture of what really occurred on the evening of the alleged assault. With regard to the
allegation that appellant hit her with his hand, she claimed that she was the aggressor that evening
and that appellant was simply defending himself. With regard to the bite allegation, she denied that
she was bitten on August 9th and claimed that the bite marks on her body were actually the result of
"love bites" that were a part of consensual sexual activity occurring on the prior evening (August
8th). (4)

 At the jury charge conference, appellant requested consent instructions in connection with
both the alleged striking and the alleged biting. The trial court denied these requests. The court did,
however, submit an instruction on self-defense. With regard to the elements of the offense, the
charge's application paragraph instructed the jury to find appellant guilty if it found "from the
evidence beyond a reasonable doubt that on or about August 9, 2003, in Fort Bend County, Texas,
the defendant did intentionally, knowingly, or recklessly cause bodily injury to Shelby Hooper by
striking her with his hand or by biting her." (5) The jury found appellant guilty. 

B. Appeal


 The court of appeals reversed, holding that Hooper's testimony that the bite was consensual
was sufficient to raise the defense of consent (6) as to the biting allegation, and consequently, appellant
was entitled to the consent instruction as to that allegation. (7) The appellate court subsequently
decided it could not find the error harmless under the standard applicable to non-constitutional error
because it could not determine whether the jury convicted on the basis of biting or striking (or both)
and because "whether Hooper was assaulted was a determination for the jury to make." (8) 

II. ANALYSIS 
 

 The State's position is that Hooper's testimony concerning "love bites" occurring on August
8th and the police testimony regarding unwanted biting occurring on August 9th described separate
instances of conduct. Appellant contends that the same instance of conduct was described, and there
was simply a dispute about the timing and nature of that single instance of conduct. It is certainly
true that the defendant cannot foist upon the State a crime the State did not intend to prosecute in
order to gain an instruction on a defensive issue or a lesser included offense. (9) But it is also true that
the defendant has the right to controvert the facts upon which the prosecution intends to rely, and
that right includes claiming that events unfolded in a way different than the State has alleged. 

 In resolving the issue before us, we must first keep in mind that we do not apply the usual
rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a
requested defensive instruction (whether for the submission of a defense or for a lesser-included
offense). Quite the reverse, we view the evidence in the light most favorable to the defendant's
requested submission. (10) We also find it helpful to examine the facts and reasoning in Campbell v.
State, (11) which serves mainly as a useful contrast to this case but also contains some pronouncements
relevant to framing the issue currently before us. 

 In Campbell, the defendant was prosecuted for possession of between 4 and 200 grams of
methamphetamine with intent to distribute. (12) At trial, the State introduced evidence that 8.64 grams
of this substance was found in a backpack in the back seat of a maroon Cadillac in which Campbell
was a passenger. (13) Campbell took the witness stand and denied owning the drugs found in the
Cadillac (casting blame on his estranged wife), but he admitted to possessing less than one gram of
methamphetamine in a toolbox in his truck at the motel where he had been picked up. (14) He claimed
that his testimony was sufficient to raise the lesser-included offense of possession of
methamphetamine under one gram. (15)

 In rejecting this contention, we undertook to determine whether there were "two distinct
criminal acts." (16) We indicated that certain factual elements "such as time, place, identity, manner,
and means" were relevant to this type of inquiry. (17) We subsequently observed that the narcotics that
Campbell confessed to possessing "were at a different location than those for which the State offered
proof," and we found "no evidence in the record linking the possession of the narcotics in the
backpack in the Cadillac to the possession of the narcotics [in the toolbox] in the truck." (18) We
concluded that a close look at the facts revealed that "the alleged possession to which appellant
confessed [was] a separate offense, unrelated to the crime for which he was charged." (19) 
Consequently, we found that possession of the drugs in the truck did not constitute a lesser-included
offense of possession of the drugs in the Cadillac. (20)

 As in Campbell, the question here is whether we are dealing with distinct instances of
conduct or alternative versions of the same instance of conduct. That inquiry must, of course, be
conducted within the proper standard of review: in the light most favorable to the defendant's
requested instruction. Consequently, the inquiry is whether, viewed in the light most favorable to
the defendant's requested submission, the evidence is sufficient for a rational jury to conclude that
the State and the defendant are proposing alternate versions of the same instance of conduct rather
than separate instances of conduct. In other words, a rational factfinder must have reason to believe
that the defendant's scenario competes, rather than coexists, with the State's scenario. For the
former to occur, it seems to be generally, perhaps always, true that the evidence must reveal some
sort of connection between the two described instances that suggests that they are, in fact, only one
instance. Our "on or about" jurisprudence has often focused on when and under what circumstances
the State is required to elect between multiple instances of conduct that appear to conform to the
allegations of the charging instrument. But, if there is evidence that the parties' respective scenarios
compete, then there is no occasion for the State to elect: the parties are not presenting multiple
instances of conduct but are presenting alternate versions of the same instance, at least for the
purpose of determining whether to grant the submission of the defendant's requested charge. A classic situation in which the parties may dispute the timing of an offense is in a murder
prosecution. Obviously, a person cannot be killed twice, so a claim by the defense that the victim
was killed on a different day than alleged by the State's evidence amounts to proposing an alternate
version of the offense rather than a separate offense. A defendant might, for example, claim that the
killing was with "sudden passion" so as to obtain the sudden passion mitigating instruction at the
punishment phase of trial, or under older law, a voluntary manslaughter instruction at the guilt phase
of trial. Perhaps this hypothetical defendant produces evidence that on the day before the alleged
date of the offense, the victim and the defendant had a heated argument of a nature that raised sudden
passion, and that the argument was witnessed by a third person. In that scenario, the defendant might
claim the victim was killed the same day as the argument, under sudden passion, but the State might
claim that the killing occurred a day later, after the passion should have cooled. Both parties' claims
are connected by the evidence that the victim is dead. Each party is trying to explain the fact of the
death, and those explanations involve the offense occurring at different points in time. 

 In the present case, appellant's proffered instance of conduct was temporally separated by
a day from the instance of conduct relied upon by the State. But the defensive story presented here
is similar to the murder example and differs from Campbell in two crucial respects: (1) the defensive
evidence in this case denied that the State's proffered "unwanted biting" incident ever occurred,
claiming instead that a "love bites" incident occurred, and (2) the bite marks supplied an evidentiary
connection between the two proffered instances that suggested they were one. The State claimed that
the bite marks were produced during a non-consensual assault occurring on August 9th while
appellant claimed that those very same marks were produced, instead, during a consensual sexual
encounter occurring on August 8th.

 With regard to the first point of distinction, we observe that appellant's case would have been
like Campbell if appellant had claimed that he gave Hooper "love bites" on August 8th and that
someone else bit Hooper on August 9th, and for whatever reason, Hooper decided to blame the
incident on appellant. Campbell simply failed to even suggest that there was only one instance of
conduct being discussed in his case. He did not claim that the State had failed to accurately measure
the quantity of methamphetamine in the Cadillac, nor did he claim that the drugs were not actually
present there but were, in fact, somewhere else (i.e. the truck). Rather, he admitted the existence of
the drugs in the Cadillac, but disassociated himself from them, and claimed different drugs as his
own. Even if Campbell had possessed evidence arguably linking him to both stashes of the drugs
- if, for example, a lab analysis had revealed traces of methamphetamine on his clothes - the story
he presented did not deny the existence of the stash of methamphetamine upon which the State
relied, so connection to the stash in the truck could not in any way absolve him of connection to the
stash in the Cadillac.

 Of course, Campbell provided no such connecting evidence. He denied possessing the drugs
in the Cadillac, but this bare denial of the State's claim was immaterial to whether the instance of
conduct that he claimed occurred (possession in the truck) served in any fashion to rebut the State's
claim. By contrast, the bite marks in the present case supplied a reason for the factfinder to believe
that the parties were in fact referring to the same incident. Without the bite marks in this case, there
would be no basis, apart from appellant's bare denial of the State's version of events, for concluding
that the evidence described one incident instead of two. As with the dead body in the hypothetical
murder defendant's case, the bite marks here served to tie the two scenarios together, making them
alternative versions of one event. Appellant's scenario was an alternate explanation for the
appearance of those marks: giving the jury the task of deciding whether the marks were produced
by "love bites" on August 8th or by an assault on August 9th. The bite marks were used by the State
as evidence that the crime was committed; the alternate story supplied by the defense was an attempt
to explain that evidence away.

 Because the instances of conduct respectively supported by the parties were in competition,
the defendant was entitled to his defensive instruction. Without the consent instruction, the jury
charge authorized conviction for biting even if the jury believed the defense's scenario. This is so
because the "love bites" incident satisfied the elements of assault that were outlined in the submitted
jury instructions. "Lack of consent" is not an element of assault under §22.01; rather, "consent" is
set up as a defense to assault under §22.06: "The victim's effective consent . . . is a defense to
prosecution under Section 22.01 (Assault) . . . if . . . the conduct did not threaten or inflict serious
bodily injury." (21) The jury charge tracked the language of §22.01 but did not include the language
of §22.06. And because the jury charge included the standard "on or about" language in its
application paragraph - giving the State leeway (as it should) in proving when the offense occurred
- conduct consisting of "consensual biting on August 8th" was encompassed by the application
paragraph's allegations. The consent instruction is what would have given the jury a vehicle to
effectuate any belief in the defendant's claim that the biting incident, and the bite marks that resulted,
were a product of consensual conduct that was not against the law. 

 It is true that the State also prosecuted appellant for striking Hooper with his hand. But the
jury charge submitted the biting and striking allegations in the disjunctive, so the defendant's
proposed instruction was needed to rebut a theory of liability upon which the jury could have decided
to solely rely. (22) We conclude that the court of appeals was correct in holding that the trial court erred
in denying the defendant's requested instruction. 

 The judgment of the court of appeals is affirmed.

Date delivered: November 1, 2006

Publish
1. See Sledge v. State, 953 S.W.2d 253, 255-256 (Tex. Crim. App. 1997); Campbell v.
State, 149 S.W.3d 149, 156 (Tex. Crim. App. 2004)(Keller, P.J., concurring).
2. See Campbell, 149 S.W.3d at 156 (Keller, P.J., concurring).
3. Tex. Pen. Code §22.01(a)(1), (b)(2).
4. The victim's effective consent . . . is a defense to prosecution under Section 22.01
(Assault) . . . if . . . the conduct did not threaten or inflict serious bodily injury."See Tex. Pen.
Code §22.06(1).
5. The words "on or about" were not defined in the charge.
6. See Tex. Pen. Code §22.06(1).
7. Bufkin v. State, 179 S.W.3d 166, 173 (Tex. App. - Houston [14th Dist.] 2005).
8. Id. at 175. The State's petition for discretionary review does not complain about the
harm analysis.
9. See Campbell, 149 S.W.3d at 157 (Keller, P.J., concurring).
10. See Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001)(evidence supporting
self-defense instruction viewed in light most favorable to defendant); Campbell v. State, 614
S.W.2d 443, 445-446 (Tex. Crim. App. 1981)(question of whether to submit lesser-included
offense charge determined as a defensive issue: the truth of the accused's testimony is not at
issue).
11. 149 S.W.3d 149 (Court's op.).
12. Id. at 150.
13. Id.
14. Id. at 151, 155.
15. Id. at 151.
16. Id. at 155.
17. Id.
18. Id.
19. Id.
20. Id. at 155-156.
21. Contrast with the offense of sexual assault, which, at least in some cases, incorporates
lack of consent as an element. Tex. Pen. Code §22.011(a)(1)(A) - (C). 
22. Had the jury instructions charged the hitting and biting theories conjunctively, an
argument could be made that the "love bites" incident, which did not include hitting, could not
have served as a basis for conviction, even under the charge's "on or about" language. But that is
not the case before us.