**Affirmed as Modified and Opinion Filed April 12, 2016**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-15-00198-CR

**RIGOBERTO VAZQUEZ HERNANDEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F13-59234-P**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Myers
Opinion by Justice Francis

Rigoberto Hernandez appeals his conviction for the capital murders of Francisco Martinez and Claudia Balderas. Because the State did not seek the death penalty, punishment is life in prison without parole. In a single issue, appellant claims the trial court erred by failing to instruct the jury on self-defense and he was egregiously harmed by the error. Viewed in the light most favorable to appellant, the evidence at trial, including eyewitness testimony, a surveillance video capturing the shootings, and appellant's testimony, does not raise self-defense. On our own motion, we modify the trial court's judgment to reflect (1) the trial court assessed punishment and (2) there is no possibility of parole. We affirm the judgment as modified.

In his sole issue, appellant claims the trial court erred by failing to instruct the jury on the law of self-defense. We use a two-step process in reviewing jury charge error. *Ngo v. State*, 175

S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id.* If error does exist, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction. *Id.* When the defendant fails to object, as is the case here, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Id.* at 743–44.

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and without regard to what the trial court may think about the credibility of the evidence. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). But if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Id.* Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law. *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

A person may justifiably use force against another when he reasonably believes the force is immediately necessary to protect himself from the other person's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2011). A person is justified in using deadly force against another if he would be justified in using force under section 9.31, and when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force or to prevent another's imminent commission of certain offenses, including robbery. *Id.* § 9.32(a)(1), (2). The actor's belief that deadly force is immediately necessary is presumed to be reasonable if the actor knew or had reason to believe that the person was committing or attempting to commit robbery. *Id.* § 9.32(b). A reasonable belief is one held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(42) (West Supp. 2015). The use of force against another is

not justified in response to verbal provocation alone. *Id.* § 9.31(b)(1); *Walters v. State*, 247 S.W.3d 204, 213 (Tex. Crim. App. 2007).

The evidence at trial included David Carbajal's eyewitness testimony about the events, the surveillance videotape of the entire incident from a neighboring store, and appellant's testimony.

Vilma Vicente owned the San Francisco Night Club in a strip center on Maple Avenue and appellant, her husband, helped her manage it. Vilma was eight and one-half months pregnant. Around four-thirty in the morning on August 18, 2013, Vilma and appellant were closing up when some people outside began knocking and banging on the door. Vilma walked to the door and yelled that the bar was closed even though several bar regulars, including Carbajal and Marcella Arellano, were still inside. The people outside—Francisco Martinez, Claudia Balderas, and Alfredo Arredondo—continued kicking the door and began yelling. Vilma opened the door and walked outside, and when Carbajal heard yelling and women fighting, he and Marcella followed her out.

According to Carbajal, Claudia and Vilma wanted to fight each other but Martinez, Arredondo and Marcella kept separating them. The two women were standing close to the door, arguing, when one of the men gave Vilma "a little push on her shoulder." Carbajal said no one made any threats and the only people fighting were Claudia and Vilma. Appellant suddenly appeared with a gun and shot Arredondo who was standing apart from the women. Carbajal said no one else had a gun or weapon of any kind and that, at that point, he feared he too would be shot, so he left.

The video camera was located at the entrance of the business next door to the club and recorded the entire event, including appellant shooting three people. The video shows a group of people at the front door of the bar. The door opened, and several people exited the bar. Claudia

and Vilma argued and were gesturing at each other; Marcella stood between them. When Claudia and Vilma grabbed each other, Marcella separated them. The men watched but were generally not engaged in the physical argument. Marcella pushed Claudia toward the wall, and Vilma stepped off the curb into the parking lot. As she did, Arredondo reached his left arm around the left side of her body. Vilma pushed him away, causing him to stumble backwards further into the parking lot.

At this point, appellant appeared with a gun in his hand. Stepping off the curb, he raised his right arm and shot Arredondo in the face. Appellant turned and shot Martinez who fell back onto the curb. He then walked to where the three women were standing. He separated Marcella and Vilma from Claudia and, using his outstretched left arm, held Claudia in place. As Marcella and Vilma walked back toward the bar, he shot Claudia twice in the chest. He turned and walked to the bar.

Martinez struggled to sit up and reached in his pocket for his cell phone. Appellant returned, stood behind Martinez, and pointed his gun at Martinez's head. A man and a woman walked behind appellant, got in a car, and drove off. Appellant looked toward the bar door; Marcella, Vilma, and a third person left and got in a pickup truck. As the pickup pulled out of the parking lot, appellant shot Martinez in the back of his head. He started to leave but turned and shot Martinez one last time, then ran away. Shortly afterwards, a white van drove slowly by the club. According to the counter on the video recorder, the entire incident took about two minutes.

Police received a 911 call from a passerby. When they arrived, they found the bodies of Arredondo, Martinez, and Claudia in the parking lot in front of the bar. After being contacted by police, the owner of the store next to the bar played the video for the police and identified Vilma as the owner of the bar and appellant as the shooter. Police located a nearby address for Vilma

–4–

and drove to the address where they saw Vilma standing next to a white van in front of the house. She got in the van and drove off but was pulled over by police not far away. When police searched the area around the van, they found a bag containing a photo album with photographs of Vilma, appellant, and some children as well as what appeared to be a change of clothes for a man. Although she initially denied knowing appellant, police found a wallet with his identification card inside the van. Vilma was taken in for questioning and within a day, appellant turned himself in.

Appellant told the jury that when his wife opened the door, the people outside dragged her out by the hair. He got outside "as soon as possible" and when he did, he saw a man grab Vilma and demand she give him the money. He shot "out of fear for [his] wife's life" as well as the life of his unborn baby. He said the people were "aggressive" and continued "to attack us and threaten us." Appellant thought it was necessary to pull out his gun and shoot those people to protect himself, his wife, and their unborn child.

Appellant also told the jury that, about ten months before the murders in the parking lot, he was robbed in the area behind the bar. Two men, one of whom had a pistol, attacked him and demanded his wallet. They kicked him until he told them the wallet was on the ground, and then took his wallet and fled. Appellant claimed he grabbed his gun because he thought he would be robbed like he was on the previous occasion.

On cross-examination, appellant said he told the man who grabbed Vilma that he had the money. He shot that man because, "I feared that when I told him that I was the one that had the money, that he would come towards me. I had the gun and perhaps if I had not had the gun, I would have given him the money." He conceded that Arredondo did not have a weapon but said he "looked towards me" with what appellant feared was "the intention for me – him to come over towards me to grab the gun and hurt everybody present." He then shot Martinez because

–5–

"[h]e was being aggressive as well" and "threatening" him. He shot Claudia because she was "hysterical saying she wanted to attack" Marcella and Vilma and he "could not control her with words."

The charge instructed the jury to find appellant guilty if it found he caused Martinez's death by shooting him with a firearm, and during the same transaction, or during a different criminal transaction under the same scheme or course of conduct, appellant caused Claudia's death by shooting her with a firearm. The charge also instructed the jury on defense of a third party, that is, to find appellant not guilty if, under the circumstances as appellant reasonably believed them to be, he would have been justified in using deadly force against Martinez and Claudia to protect himself in self-defense against the unlawful deadly force he reasonably believed to be threatening Vilma.

Although appellant argues his testimony was some evidence he was entitled to an instruction on self-defense, we disagree. No evidence shows that Arredondo, Martinez, or Claudia used or attempted to use deadly force against appellant or that appellant could have reasonably believed immediate deadly force was necessary to defend himself to prevent a robbery. The video shows it took appellant approximately five seconds to come out of the bar and shoot Arredondo and Martinez and, seconds later, Claudia. Furthermore, while appellant's testimony described verbal threats, verbal provocation does not justify self-defense. Because self-defense was not raised in this case, the trial court did not err by failing to instruct the jury on self-defense. We overrule appellant's sole issue.

Finally, although neither party has raised the issue, our review of the record reveals two errors in the trial court's judgment. First, the judgment reflects the jury assessed punishment, not the trial court. Second, the judgment reflects punishment as life in prison, not life in prison without parole. Section 12.31(a)(2) provides that when the State does not seek the death penalty

in a capital felony trial, a sentence of life imprisonment without parole is mandatory if the person is eighteen years of age or older. *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West Supp. 2015). Because appellant was older than eighteen years of age when he committed the offense and the State did not seek the death penalty, punishment is life in prison without parole.

We have the authority to correct a judgment below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the trial court's judgment to reflect (1) the trial court assessed punishment and (2) punishment is life in prison without parole.

We affirm the trial court's judgment as modified.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
150198F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RIGOBERTO VAZQUEZ HERNANDEZ, Appellant

No. 05-15-00198-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F13-59234-P.
Opinion delivered by Justice Francis, Justices Lang-Miers and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect (1) the trial court assessed punishment and (2) punishment as life imprisonment without parole.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered April 12, 2016.