

NUMBER 13-14-00742-CR
NUMBER 13-14-00743-CR
NUMBER 13-14-00744-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHARLES DANE HILL,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

### On appeal from the 24th District Court
### of Jackson County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Benavides

Appellant Charles Dane Hill appeals his convictions for aggravated assault on a

public servant, a first-degree felony, (appellate cause number 13-14-00742-CR),

aggravated assault with a deadly weapon, a second-degree felony, (appellate cause

number 13-14-00743-CR), and deadly conduct, a third-degree felony (appellate cause number 13-14-00744-CR), by asserting that (1) the trial court erred by denying his request for a self-defense instruction; and (2) the evidence is insufficient to show that he knew that he fired his gun at a public servant.   We affirm.

## I.   BACKGROUND

On October 5, 2013, Jackson County Sheriff's Deputy Jason McCarrell responded to a call on County Road 313 regarding a disturbance involving a firearm at the rural home of Adam and Valerie Twardowski.   Valerie Twardowski testified that Hill, who was her neighbor, visited their property that evening, after the two spent the day together at a local fishing tournament.   That evening, the Twardowskis also hosted friends Michael Cornwell and Amanda Martin to show them their newly-built home and to socialize. Valerie described Hill as "a little tipsy," that evening, after evidence shows that Hill spent most of the day drinking beer and vodka-soaked gummy bears at the fishing tournament. According to Valerie, an argument later ensued between her, Adam, and Hill, after Valerie's oldest daughter told Valerie that Hill had called her a vulgar name.   When the Twardowskis asked Hill to leave their property, Hill walked to his pickup and fired two gunshots in the direction of the Twardowski home, where the group had been standing outside.

After Hill fired the shots, Cornwell approached Hill's truck in an effort to take the gun away from him.   Cornwell testified that during their melee, Hill pointed the gun at him and a struggle ensued between them inside the cab of Hill's pickup.   According to Cornwell, Hill managed to discharge the gun once inside of pickup during the struggle, but Hill was unable to fire a second round because Cornwell jammed his finger between

2

the gun's hammer and the gun itself. Cornwell also testified that during the fight, Hill bit Cornwell's arm several times, which left Cornwell with scars. Once the fight subsided, Hill used vulgarity against Cornwell for calling the police and "peel[ed]" off the Twardowski property. Cornwell testified that shortly after Hill left the Twardowski property, Hill crashed his pickup into the ditch that runs parallel to County Road 313 along the Twardowski and Hill property lines.

Upon learning of these events from the Twardowskis and Cornwell, Deputy McCarrell, along with Deputy Carlos Sertuche, proceeded to the Hill residence in their respective units, with Deputy McCarrell taking the lead. Maps admitted into evidence reflect that the Hill property is adjacent to the Twardowskis' on County Road 313. The Hill home is located deeper on the property and is led by a long, unpaved driveway beginning from County Road 313. Deputy McCarrell testified that he and Deputy Sertuche approached the Hill property from County Road 313 utilizing thermal imagers. Deputy McCarrell further testified that he and Deputy Sertuche did not utilize their patrol unit's traditional red and blue police lights as they entered the Hill property. Instead, the deputies utilized their "take-down lights," which Deputy McCarrell described as white LED high-beam headlights located on the unit's light bar.

According to Deputy McCarrell, upon entering the Hill property via the caliche driveway, he observed "a full grown man walking around" (later identified as Hill) as the deputies continued to approach the Hill home "really slow" in their units. Deputy McCarrell then testified that he temporarily lost sight of Hill, but regained view of him, when he then observed Hill "standing in the front yard . . . holding a rifle." Upon witnessing Hill holding the rifle, Deputy McCarrell stopped his patrol unit, turned off his

3

lights, grabbed his rifle, and exited his unit to move toward the outside passenger side for cover. Deputy Sertuche followed Deputy McCarrell and also turned off all of his unit's lights. Deputy McCarrell told jurors that he did not turn on his traditional red and blue police lights or announce that he was law enforcement because based on all of the information he had gathered from the Twardowskis and Cornwell, he "feared for [his] life" and "felt that [Hill] was going to try to kill [him] if [he] exposed [himself] to [Hill]. . . ."

While seeking cover behind his unit, Deputy McCarrell observed Hill "leaning over a barricade" with Hill's rifle pointed directly at him. Deputy McCarrell then observed Hill "messing with" his rifle, so he decided to continue to seek cover behind his unit. Deputy McCarrell again looked toward Hill's direction and observed Hill "standing there with the rifle pointed directly at me again," so he continued to seek cover. Deputy McCarrell then stated he heard one shot fired from Hill's direction and observed Hill continuing to point the rifle toward Deputy McCarrell's police unit. In response, Deputy McCarrell then fired three shots in Hill's direction. Deputy Sertuche immediately radioed to dispatch that shots had been fired, and Deputy McCarrell radioed to Deputy Sertuche to pick him up in his unit so that they could retreat from the Hill property. According to Deputy Sertuche, Deputy McCarrell relayed to him that he believed that Hill also had a thermal imager because he shot in their direction in the dark. Deputies Sertuche and McCarrell then evacuated from the Hill property and returned to the Twardowski property to contact other law enforcement agencies such as the Texas Department of Public Safety and the Victoria County Sheriff's Office SWAT team for backup.

One of Deputy McCarrell's three shots struck Hill's left hand causing severe injuries to Hill. As a result, Hill telephoned 9-1-1 for assistance, and emergency medical

4

workers were dispatched to the Hill property. However, Deputy McCarrell testified that he refused to grant emergency workers clearance to enter the Hill property until Hill and his weapon had been secured. Deputy McCarrell returned to the Hill property, and eventually, Hill approached the law enforcement officers who had descended upon his property and was arrested at gunpoint by Deputy McCarrell and others.

The State indicted Hill under three separate cause numbers. Under trial court cause number 13-11-9140 (appellate cause number 13-14-00742-CR), the State charged Hill with one count of aggravated assault on a public servant (Deputy McCarrell), a first-degree felony, *see* TEX. PENAL CODE ANN. § 22.02 (West, Westlaw through 2015 R.S.), and one count of aggravated assault with a deadly weapon against McCarrell as an individual. *See id.* Under trial court cause number 13-11-9158 (appellate cause number 13-14-00743-CR), the State charged Hill with one count of aggravated assault with a deadly weapon against Cornwell, a second-degree felony. *See id.* Finally, under trial court cause number 13-11-9159 (appellate cause number 13-14-00744-CR), the State charged Hill with deadly conduct against Cornwell, Valerie Twardowski, or Adam Twardowski, a third-degree felony. *See id.* § 22.05(b) (West, Westlaw through 2015 R.S.).

The jury found Hill guilty of aggravated assault on a public servant, aggravated assault with a deadly weapon, and deadly conduct, as alleged in the indictments. The jury assessed Hill's punishment at twenty, ten, and five years' confinement, respectively, in the Texas Department of Criminal Justice's Institutional Division. The trial court signed and entered three judgments reflecting each of the jury's convictions. This appeal followed.

5

## II.  SELF-DEFENSE INSTRUCTION

By his first issue, Hill asserts that the trial court reversibly erred by denying his request for a self-defense instruction in the jury charge.

### A.  Standard of Review

Our first inquiry is whether the charge contained error.   *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015).   If error exists, we then analyze for harm.   *Id.*   If the error was preserved by objection, any error that is not harmless will constitute reversible error.   *Id.*   If the error was not preserved by objection, the error will not reverse the conviction without a showing of egregious harm—that is, harm that deprives a defendant of a "fair and impartial trial."   Because Hill objected to the trial court's failure to include a self-defense instruction, if we find that the jury charge was erroneous, we will analyze the error for some harm.   *Id.*

### B.  Discussion

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.   *Id.* § 9.31(a) (West, Westlaw through 2015 R.S.).   Furthermore, a defendant's belief that force was immediately necessary is presumed reasonable if the defendant:   (1) knew or had reason to believe that the person against whom the force was used: (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment; (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or (C) was committing or attempting to

6

commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; (2) did not provoke the person against whom the force was used; and (3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used. *Id.* A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). If the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, then he is not entitled to an instruction on the issue. *Id.*

In this case, it is unclear as to which of his charges Hill sought an instruction on self-defense. However, the evidence, viewed in the light most favorable to Hill, shows that he was not entitled to a self-defense instruction to any of his charges. Hill first fired his weapon at the Twardowski residence from his truck, after being asked to leave the Twardowski property for using vulgar language against Valerie's daughter. After that, Cornwell approached Hill's truck, and Cornwell and Hill entered into a scuffle, when Hill again discharged his firearm through the roof of his pickup. Based on this evidence, Hill was not entitled to a self-defense instruction because he provoked the action against the guests at the Twardowski property by firing his gun at them, and was engaged in criminal activity—that is, deadly conduct, his conviction which goes unchallenged in this appeal. *See* Tex. Penal Code Ann. § 9.31(a).

Next, the evidence further shows that Hill again fired his rifle first as Deputies McCarrell and Sertuche approached his residence in their patrol units. This fact is

7

supported not only from Deputy McCarrell's testimony, but also by Hill's recorded statement to Texas Ranger Bradley Freeman. Although Hill also told Ranger Freeman that he felt "endangered" when Hill fired his rifle into the air, nothing in the evidence, viewed in the light most favorable to Hill, shows that there was a use or attempted use of unlawful force by Deputy McCarrell against Hill that would have entitled Hill to a self-defense instruction. *See* TEX. PENAL CODE ANN. § 9.31(a); *Ferrel*, 55 S.W.3d at 591. Accordingly, we overrule Hill's first issue.

## III. SUFFICIENCY CHALLENGE

By his second issue, Hill asserts that the evidence is insufficient to sustain his conviction for aggravated assault against a public servant because Hill did not know that Deputy McCarrell was a public servant at the time he fired his rifle.

### A. Standard of Review

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if

8

the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge in this case, Hill is guilty of aggravated assault on a public servant if he intentionally or knowingly threatened with imminent bodily injury by using or exhibiting a deadly weapon against Deputy McCarrell, a person that Hill knows is a public servant while Deputy McCarrell is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant. *See* Tex. Penal Code Ann. §§ 22.01 (West, Westlaw through 2015 R.S.); 22.02(a)(2), (b)(2)(B). A defendant is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. *Id.* § 22.02(c). Finally, a public servant is defined, in relevant part, as a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties: an officer, employee, or agent of government. *See* Tex. Penal Code Ann. § 1.07(a)(41) (West, Westlaw through 2015 R.S.).

## B. Discussion

The record shows that as Hill left the Twardowski property to return to his own

property, he cursed at Cornwell for calling the police. Furthermore, testimony shows that a short time after Hill left the Twardowski property and crashed his own pickup into a ditch, Deputies McCarrell and Sertuche arrived and entered the Hill property via Hill's driveway from County Road 313 without their units' standard "red and blue" overhead lights engaged and instead only had their high-beam LED "take-down" lights illuminated. Deputy McCarrell testified that "blue vinyl" and "orange reflective vinyl" decals run across the side of the units, which identify it as the Jackson County Sheriff's Office. According to Deputy McCarrell, the decals are "more vibrant at night" when lights reflect off the decals. Deputy McCarrell further testified that as he approached the Hill residence, he observed Hill—through the aid of his thermal imager—point his rifle directly at Deputy McCarrell's unit twice, which caused Deputy McCarrell to believe that Hill had his own thermal imager. In a statement given to Ranger Freeman the day after the shooting, Hill denied that he knew that Deputies McCarrell and Sertuche were law enforcement officers. Instead, Hill told Ranger Freeman that he thought it was his neighbor who had pulled into his driveway, seeking revenge from the prior incident that had occurred.

Viewing this evidence in the light most favorable to the verdict and deferring to the jury's credibility and weight determinations, we conclude that a rational fact finder could have found beyond a reasonable doubt that Hill knew that the Twardowskis had called the police regarding the prior incident on their property and that the Jackson County Sheriff's Office appropriately responded to Hill's property to further investigate. Furthermore, despite the units not displaying the standard "red-and-blue" overhead lights, we further conclude that a rational jury could have found that the use of the high-beam "take-down" lights appropriately reflected the Jackson County Sheriff's Office decals to

10

Hill for his inspection. Thus, a rational fact finder could have found beyond a reasonable doubt that Hill fired his rifle knowing that the sheriff's office was on his property lawfully discharging an official duty related to the incident at the Twardowski residence. Therefore, we conclude that the evidence is legally sufficient to support Hill's conviction for aggravated assault on a public servant. We overrule his second and final issue.

## IV. CONCLUSION

We affirm the trial court's judgments.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
26th day of May, 2016.

11