ACCEPTED
03-14-00290-CR
3964923
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/30/2015 12:32:58 PM
JEFFREY D. KYLE
CLERK

# No. 03-14-00290-CR

In the
Court of Appeals
Third District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

1/30/2015 12:32:58 PM

JEFFREY D. KYLE
Clerk

**Michael Shawn Alexander,**
Appellant

v.

**The State of Texas,**
Appellee

---

Appeal from the 403rd Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-201709

---

## STATE'S BRIEF

---

**Rosemary Lehmberg**
District Attorney
Travis County

**Georgette Hogarth**
Assistant District Attorney
State Bar No. 24007129
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Georgette.Hogarth@traviscounty.gov
AppellateTCDA@traviscounty.gov

*Oral argument is not requested*

# Table of Contents

Index of Authorities.............................................................................. ii

Statement of the Case ..........................................................................iii

Statement Regarding Oral Argument.................................................. iii

Statement of Facts ................................................................................1

Summary of the State's Argument.....................................................10

POINT OF ERROR ............................................................................ 11

   No evidence was presented to support an inference that the
appellant acted in self-defense when he choked or strangled the
victim, thus the trial court properly denied the appellant's request
for an instruction. ........................................................................... 11

Prayer ................................................................................................ 20

Certificate of Compliance ..................................................................21

Certificate of Service..........................................................................21

i

# Index of Authorities

**Cases**

Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g).................................................................................... 11
Alonzo v. State, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011) ............13
Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) ............. 11
Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) ...............12
Gonzales v. State, 2014 Tex. App. LEXIS 12944, 8-9, mem. op.,(Tex. App. Austin Dec. 4, 2014)...........................................................18
Hooper v. State, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007)............18
Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).............. 11
Shaw v. State, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007) ........12
VanBrackle v. State, 179 S.W.3d 708, 715 (Tex. App. Austin 2005)...14
Warner v. State, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).......... 11

**Statutes**

Tex. Pen. Code § 9.01(3) ....................................................................13
Tex. Penal Code § 19.03.......................................................................iii
Tex. Penal Code § 9.32.........................................................................13
Tex. Penal Code §9.31...........................................................................13

## Statement of the Case

On April 15, 2013, a Travis County grand jury indicted the appellant for assault by strangulation, family violence, enhanced with prior family violence assault convictions, as well as with other convictions. CR 23-25; Tex. Penal Code § 22.01 (b-1). The appellant pleaded not guilty and proceeded to a trial by jury. CR 147, 5RR 9. The jury convicted the appellant of assault, family violence, as alleged in the indictment. CR 161; 6RR 235-6. The appellant elected to have the trial court assess punishment, and, on April 23, 2014, the court assessed punishment at confinement in the institutional division of the Texas Department of Criminal Justice for twenty-five years. CR 162. The trial court certified the appellant's right to appeal. CR 164, 168-69. The appellant filed a motion for new trial and notice of appeal on May 16, 2014. CR 198-208.

## Statement Regarding Oral Argument

The State does not believe that oral argument is necessary, but if the court grants argument, the State respectfully requests to argue as well.

**No. 03-14-00290-CR**

In the
Court of Appeals
Third District
Austin, Texas

---

**Michael Shawn Alexander,**
Appellant

v.

**The State of Texas,**
Appellee

---

Appeal from the 403rd Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-2001709

---

**STATE'S BRIEF**

---

To the Honorable Third Court of Appeals:

Now comes the State of Texas and files this brief in response to that of

Appellant.

**Statement of Facts**

On March 25, 2013, around 9 p.m., Officers Cornette and Carruth

were responding to an unrelated disturbance call on Clifford Avenue in East

Austin when they stepped outside on the porch of a residence and heard a

high-pitched scream.[1]  5RR 24-26, 65. Fearing that someone was in trouble,

they went down the street to investigate. 5RR 27, 66.  As the officers

---

[1] The officers' microphones linked to the in-car video captured the scream.  5RR 41, 44, 72; SE 25, 26.

1

proceeded down the street, a couple of gentlemen who were hanging out in a driveway directed them toward the location of the scream. 5RR 30-32, 66. In the meantime, the officers were advised over the radio that a call came in regarding a scream and a male running from a fenced-in yard. This information corresponded to the officers' location and to what the officers had heard. 5RR 33, 67. The officers proceeded to walk toward the direction of the house, which had a low fence around the front yard, and they saw a man outside "banging on the door and yelling." 5RR 35, 67. The officers drew their weapons, commanded the male (identified as the appellant) to come to the officers, and handcuffed him. 3RR 35, 48, 62, 68. The officers drew their weapons because of the severity of the scream and the appellant appearing as though he was trying to get inside the house. 5RR 74. The officers noticed that the appellant was sweating profusely even though it was 50 degrees outside. 5RR 48, 73, 88-89.

Officer Cornette knocked on the door of the home to check on the welfare of any occupants and found a woman inside. Cornette briefly talked to the woman, determined that she had been assaulted but not in immediate need of EMS. Officer Cornett then left, handing the case over to Officer Troy Wiser, who had been the one assigned this particular call. 3RR 36-37. 60, 69.

When officer Wiser arrived, the appellant was placed in his vehicle, while he conducted further investigation. 5RR 86. Wiser went inside the home, which appeared "more or less organized" (5RR 94), and spoke to Darnise Bowens. 5RR 87. Bowens was crying and had a really red face. *Id*. Bowens had difficulty speaking through her crying, appeared nervous and afraid. 5RR 88. Bowens had a bloodstain on her shirt. 5RR 95. Bowens did not appear sweaty as the appellant did. 5RR 89. Bowens made an allegation of strangulation, which requires that EMS is called because of the possibility of non-visible injuries. 5RR 91. Bowens complained of pain in the neck area and back of right shoulder. 5RR 98. Officer Wiser did not see any visible injuries on Bowens' neck, but that is not unusual with strangulation. 5RR 104. Officer Wiser talked with Bowens for five to ten minutes (5RR 93), and then went outside to talk to the appellant, who was not forthcoming with information. 5RR 95, 99.

Based on what he observed and on the statements made, Wiser placed the appellant under arrest. 5RR 95. Wiser took the appellant to central booking, and testified that the appellant became more "cordial" and "charming" as time passed. 5RR 99. At one point, the appellant called

Wiser over and showed him a bite mark on his upper right arm and a cut on his upper lip.[2] 5RR 100.

In light of the information Wiser obtained from Bowens, he testified that the bite mark on the appellant's arm appeared to be a wound created by Bowens in defending herself in an effort to get his arm away from her face. 5RR 104-05. Wiser demonstrated a choke hold for the jury. 5RR 106. Wiser also explained why such a wound on the appellant's arm would be very unlikely if Bowens had been on the offensive. 5RR 107. Based on Bowens' and on the appellant's condition that night, and the statements that they gave, Wiser found the injuries on the appellant more consistent with Bowens' version of events.[3] 5RR 109.

Stephanie Burgess, a licensed social worker with the police department, was called out to Bowens' home for victim services on the night in question. 5RR 153-54. Burgess described Bowens as "very red" and looked like she had been crying and was fearful of the appellant. 5RR 155.

EMS was called as per protocol of the Austin Police Department policy. 6RR 7. Paramedic Ken Saunders responded and described Bowens as very

[2] Photos were taken of both the appellant and Bowens on that night. 5RR 102; SE 28-35.
[3] Wiser explained that the statements he takes at the scene are not formal, detailed statements, which are taken at a later time. 5RR 110.

4

upset, emotional and crying. 6RR 12. Saunders observed bruising on Bowens and wanted her to go the hospital. 6RR 38. Bowens refused transport to the hospital, and instead she was given all the information that she needed to determine whether she needed further treatment later on. 6RR 17- 22, 38.

Bowens suffered extreme pain in the neck area and her arms from the assault. 5RR 209. She took 800 milligrams of ibuprofen for the pain. 5RR 210.

Bowens testified that she moved to Austin in 2005 from Louisiana, shortly after Hurricane Katrina. 5RR 169-170. A couple of years after moving to Austin, she met the appellant. 5RR 170. The two eventually married, but divorced in 2011. 5RR 171. Following the divorce, the appellant was out of Bowens' life; however, he reinitiated contact and eventually, Bowens allowed him back into her life when he said he had changed. 5RR 173-74.

Bowens testified that the appellant started sleeping in his car in Bowens' driveway. 5RR 177. In time, Bowens allowed him to sleep inside her home. 5RR 177. Bowens also gave the appellant rides to work when he procured a job through a friend at the Circuit of the Americas racetrack because his car

5

was not reliable. 5RR 174-78. The appellant was able to make other arrangements for a while by sleeping at a trailer near the track, but when this arrangement fell through, the appellant asked to stay with Bowens and she agreed. 5RR 178-79. At the time, Bowens was living with her three children, ages 18, 20, 22, in a 900 square-foot home. 5RR 180, 186. The appellant slept in the living room. 5RR 181. The appellant, however, did not respect Bowens' boundaries, and intimate relations resumed between them. 5RR 182.

On March 25, 2013, Bowens had allowed the appellant to use her car as long as he picked Bowens up from work. The appellant was taking some classes at ACC and did not have a car. 5RR 183. However, when it was time for the appellant to pick up Bowens, he did not show up. 5RR 183. Bowens phoned him and he came an hour later to get her. 5RR 184. Bowens had worked a long shift at her job that day (5RR 183), and they went home, where they were alone. 5RR 185-86. Bowens was tired, knew she had a long day ahead of her the next day, and all she wanted to do when she got home was take a bath and go to bed. 5RR 186. The appellant, however, wanted Bowens to pay attention to him. He wanted Bowens to focus on his needs and to help him out with his things. 5RR 186-87. The appellant kept following Bowens around the home. 5RR 186. As she went

6

to her bathroom, she walked in and was surprised when the appellant attacked her, putting his arm around her neck, choking her. 5RR 187-88. The appellant used his arm and put it around her neck and held. 5RR 188. Bowens tried to get out of the choke hold—she bit the appellant's arm, screamed, and cried. 5RR 190. The attack lasted about three to five minutes, and when Bowens said "Jesus," the appellant released her for some reason, and pushed her toward the bathtub. 5RR 188. She took that opportunity to get out of the bathroom and went into her bedroom. The assault continued with the two of them wrestling on her bed. 5RR 191-93. At some point Bowens was able to run out and went in the living room but the appellant caught up with her. The appellant pushed her in a chair, got on top of Bowens, and put his hands around her neck. 5RR 193. Bowens could see the rage in the appellant's eyes as he attacked her. 5RR 194. This incident lasted some three to four minutes. 5RR 194. Bowens was punching at the appellant, and he eventually let her go. 5RR 195. Bowens, crying and disheveled, ran out of the house but the appellant followed her, trying to pull her back inside. 5RR 195-96. Bowens was screaming as she tried to run out to a neighbor's house. 5RR 196. Her screams caused the appellant to pull away from her, which left room for her to run back into her home and lock the doors. 5RR 196-97. Within minutes the police arrived. 5RR

7

207. The appellant was at the side of the house screaming for Bowens to let him in when the police came. 5RR 207.

The appellant continued to contact Bowens after he was taken to jail. 5RR 210. He sent her letters, but she did not write him back. 5RR 212-13, 215-16. Bowens understood that the appellant's letters concerned her signing an affidavit of non-prosecution, and he even mailed her an affidavit at one point. 5RR 218, 220-22; SE 24. The appellant also advised Bowens that she can take the 5th Amendment if she is subpoenaed. 5RR 222. Phone calls placed by the appellant to Bowens from jail were also admitted. 5RR 224; SE 15. In one of the calls, Bowens tells the appellant he was "wrong for that" and that "he should have kept his damn hands to himself." 5RR 226; SE 15 (7:15-7:30).[4] The appellant never claimed that Bowens' understanding was wrong or that Bowens started the fight. 5RR 226. During another phone call, the appellant indicated that the two of them don't need to hate each other, but he shouldn't have to go to the pen. 5RR 227; SE 16 (2:55-3:00). In another call, the appellant is asking Bowens to talk to his lawyer, which she understood as her calling the attorney and say she wasn't going through with the charges. 5RR 228; SE 17 (4:53-5:10;

---

[4] SE 15 has a four minute silent section that was cut out of the recoding. 5RR 228.

6:15-6:45; 7:25-10; 12:50-13:20).  Bowens did not contact the attorney. 5RR 228, 273.

Bowens denied that she started the fight, denied that she was jealous of something, and denied that she attacked the appellant.  5RR 228, 275.

The jury found the appellant guilty of family violence assault, by impeding normal breathing, as alleged in the indictment.  6RR 235.

## Summary of the State's Argument

***The appellant was not entitled to a self-defense instruction.***

To be entitled to a self-defense instruction, some evidence must raise each element of the defense that if believed, would support a rational inference that the element is true. Although there was evidence that the appellant had a bite wound and a small cut on his lip, there was no evidence as to how he sustained those injuries that would support a self-defense instruction. Additionally, the victim denied that she initiated an attack on the appellant and no evidence was presented that she was the first aggressor which led the appellant to have to defense himself by choking the victim. As such, the trial court properly denied the requested self-defense instruction.

**POINT OF ERROR**

**No evidence was presented to support an inference that the appellant acted in self-defense when he choked or strangled the victim, thus the trial court properly denied the appellant's request for an instruction.**

### *Standard of review*

In analyzing a jury-charge issue, the reviewing court first decides if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). Only if the appellate court finds error does it consider whether an objection to the charge was made and analyze for harm. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

When considering whether a defendant suffered harm, the reviewing court must consider: (1) the entire jury charge; (2) the state of the evidence,

including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. The reviewing court must conduct this examination of the record to "illuminate the actual, not just theoretical, harm to the accused." *Id*. at 174.

## *Argument*

The appellant maintains that the evidence supports a self-defense instruction; however, he relies on speculation to support his argument, and as such, the trial court did not err in denying his request for an instruction.

### *Applicable case law*

"A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). "Raised by the evidence" means "there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). In deciding

the issue, the evidence is viewed in the light most favorable to the defendant. *Ferrel*, 55 S.W.3d at 591.

A person is justified in using force against another when he believes the force is immediately necessary to protect him against the other's use of unlawful force. See Tex. Penal Code §9.31.  A person is justified in using deadly force "if the actor would be justified in using force against the other under Section 9.31; and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force." Tex. Penal Code § 9.32(a)(1), (2)(A).  "Deadly force" is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." Tex. Pen. Code § 9.01(3). Self-defense is available when "the amount of force actually used was permitted by the circumstances." *Alonzo v. State*, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011).

> The self-defense provisions in the Penal Code focus on the actor's motives and on the level of force used, not on the outcome of that use of force. If the actor reasonably believed that the force was necessary to protect himself against another's unlawful use of force, and the amount of force actually used was permitted by the circumstances, Sections 9.31 and 9.32 apply, regardless the actual result of the force used.

*Id.*

13

> Self-defense, like other chapter nine defenses, justifies conduct that would otherwise be criminal. In other words, the defendant must "admit" violating the statute under which he is being tried, then offer a statutory justification for his otherwise criminal conduct. Thus, a defendant is not entitled to a jury instruction on self-defense if, through his own testimony or the testimony of others, he claims that he did not perform the assaultive acts alleged, or that he did not have the requisite culpable mental state, or both

*VanBrackle v. State*, 179 S.W.3d 708, 715 (Tex. App. Austin 2005), *internal citations omitted.*

### *Analysis*

In the present case, there is no evidence that the victim attacked the appellant first or any evidence of the appellant's perceived threat that would cause him to defend himself by choking and/or strangling the victim. The assaultive conduct in this case alleged that the appellant caused bodily injury "by seizing Darnise Bowens on or about the throat or neck with his arm and/or hand or by grabbing Darnise Bowens with his hand or by pushing Darnise Bowens with his hand or by throwing Darnise Bowens with his hand or by pulling Darnise Bowens with his hand" and further that the appellant "did intentionally or knowingly or recklessly impede the normal breathing or circulation of the blood of Darnise Bowens, by applying pressure to Darnise Bowen's throat or neck with his arm and/or hand." 6RR 179; CR 23, 157.

14

At trial, the appellant requested a self-defense instruction based on Officer Wiser's testimony that "that the injuries to Ms. Darnise Bowens could have been caused by anything, including self-defense by the defendant." 6RR 174. The request was denied. 6RR 172. On appeal, the appellant adds that the appellant was bitten by the victim on his arm, suffered a cut on his lip, and had wounded his left hand. App. Bf. at 35. He continues that there was evidence that the victim punched the appellant, that the incident was like a wrestling match, and that the victim had a bloodstain on her shirt and no visible wounds. *Id.*

Officer's Wiser's testimony does not provide evidence that the victim attacked the appellant first, nor do the wounds on their own support such an inference. Specifically, Wiser testified on cross-examination to the following:

> Q. Okay. And you had stated that in your training and experience that -- that these wounds could have been consistent with defensive wounds; is that right?
>
> A. That's correct.
>
> Q. They could also have been consistent with [the appellant] being attacked; wouldn't you agree?
>
> A. Anything is possible.
>
> Q. Okay. So these wounds alone don't definitively put it one way or the other? There's more to an investigation than just the wounds; is that fair to say?

A. Yes, wounds without statements are just wounds.

5RR 128-29. This exchange does not constitute evidence that the appellant acted in self-defense and provides no indication that the victim was the first aggressor to this altercation. Rather, this exchange supports the trial court's denial of the requested instruction because the exchange elucidates that "wounds" are just "wounds" without more information. Wiser explained why such a wound on the appellant's arm would be very unlikely if Bowens had been on the offensive. 5RR 107. Based on Bowens' and the appellant's condition that night, and the statements they gave, Wiser found the injuries on the appellant more consistent with Bowens' version of events. 5RR 109.

Although the appellant had a bite wound and a small cut on his lip, there was no testimony or evidence that these wounds occurred prior to the appellant choking the victim, causing the appellant to defend himself by choking or strangling the victim. At the scene, the appellant maintained that there had been no physical altercation. 5RR 147. When the appellant mentioned the bite marks at the jail, Officer Wiser *Mirandized* the appellant and then asked if he wanted to talk further, but the appellant declined. 5RR 148. Although Epstein testified that the appellant said that "something physical had happened," there was no detail as to what exactly

16

happened or whether the appellant admitted to having strangled the victim in order to defend himself from her. 6RR 61-62; App. Bf. at 36.

The evidence that was presented regarding the appellant's and the victim's interactions from that evening mainly came from Bowens. Bowens recounted that the appellant was late picking her up from work, she was tired and when they got home she just wanted to take a bath. The appellant however followed Bowens around the house and surprise attacked her in the bathroom by placing her in a choke hold. After she got away, another altercation occurred on her bed, followed by the appellant going after her into the living room and strangling her while she was on a chair. 5RR 184-94. Bowens was able to leave the house, where her high-pitched scream alerted nearby officers. 5RR 24-26, 65, 195. Police arrived, finding the appellant banging on the door of the home and yelling. The appellant was perspiring heavily, even though it was cool that night, and provided no statement as to an altercation. 5RR 35, 48, 62, 73.

Additionally, Bowens denied that she started the fight or attacked the appellant. 5RR 228, 275. In a recorded jail phone conversation the appellant had with Bowens after he was arrested, the appellant did not claim that Bowens started the fight, agreed that he should have kept his hands to himself, and denied that he was saying he acted in self-defense.

5RR 226; SE 15.  As such, the appellant's argument that he acted in self-defense relies on speculation rather than inferences that the jury could have made from the evidence.  *See e.g. Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007) ("Speculation…about the possible meaning of facts and evidence …is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt."); *see also Shaw*, 243 S.W.3d at 657-58.

Similarly, in the recent case of *Gonzales v. State* the defendant argued that "(1) two cuts he sustained on the fingers of his left hand during the time of the offense and (2) an argument he allegedly had with the victim" supported a claim for self- defense, contending that "the cuts were defensive wounds, sustained in response to the victim's first aggressive act towards him with the knife that caused her death."  *Gonzales v. State*, 2014 Tex. App. LEXIS 12944, 8-9, mem. op., (Tex. App. Austin Dec. 4, 2014).  The appellate court agreed with the trial court that "the cuts on appellant's hand, without more, were insufficient as a matter of law to raise the element of self-defense requiring the victim to have been the first aggressor."  The court in *Gonzales* also noted that the argument defendant "allegedly had with the victim was also insufficient, without more, to raise the defense, as an argument does not equate with an act or attempted act of violence." *Id.* As in *Gonzales*, the appellant simply relies on minor wounds

18

he sustained, but does not point to testimony or evidence in the record that the victim started the physical altercation in this case.

Further, the appellant cannot show any harm from the alleged error. As noted, the evidence presented did not raise the issue of self-defense. Additionally, the victim was found in an agitated state, all red faced and crying, fearful of the appellant. 5RR 87-88, 155; 6RR 12. Testimony also revealed that with strangulation, visible injuries are minimal. 5RR 104; 6RR 154. After his arrest, the appellant repeatedly contacted the victim, pressuring her to not pursue this case and even provided her with an affidavit for non-prosecution. 5RR 218, 220-22; SE 24. At trial, the appellant's strategy questioned the victim's veracity, arguing that his hand was hurt as he was trying to leave an angry situation. 5RR 17-20; 6RR 211-215. In light of the entire evidence, the appellant cannot show that the trial court's ruling caused him any harm.

In sum, the trial court did not err in denying the appellant's request for a self-defense instruction, nor can harm be shown. The appellant's point of error should be overruled.

## Prayer

The State asks this Court to overrule Appellant's point of error and to affirm the trial court's judgment.

Respectfully submitted,

**Rosemary Lehmberg**
District Attorney
Travis County

*/s/ Georgette Hogarth*
**Georgette Hogarth**
Assistant District Attorney
State Bar No. 24007129
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Georgette.Hogarth@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

## Certificate of Compliance

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the State certifies that the length of this response is 4,017 words. The State also certifies, pursuant to Texas Rule of Appellate Procedure 9.4(e), a conventional typeface 14-point was used to generate this motion.

*/s/ Georgette Hogarth*
Georgette Hogarth

## Certificate of Service

This is to certify that a true and correct copy of this response is being served by U.S. mail, electronic mail, or by facsimile, to the appellant's attorney, Paul Evans, at 811 Nueces Street, Austin, Texas 78701, paulmatthewevans@hotmail.com, on January 30, 2015.

*/s/ Georgette Hogarth*
Georgette Hogarth