# PD-0538-15

PDR NO. **PD-0539-15**
COURT OF APPEALS NOS. **05-13-01661-CR**

IN THE TEXAS
COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

June 1, 2015

ABEL ACOSTA, CLERK

**JULIO CESAR VILALBA**
PETITIONER
VS.
**THE STATE OF TEXAS**
RESPONDENT

_____

PETITION FOR DISCRETIONARY REVIEW
OF THE OPINION OF THE
FIFTH COURT OF APPEALS OF
DALLAS COUNTY, TEXAS

_____

_____
**PETITION FOR REVIEW**

DANNY D. BURNS
115 North Henderson Street
Fort Worth, Texas 76102-1040
(817) 870-1544  FAX (817) 870-1589
State Bar No. 03443800
dburnslaw@sbcglobal.net

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

**COMES NOW JULIO CESAR VILLALBA,** Petitioner and files this his Petition for Discretionary Review of the decision of the Fifth Court of Appeals sitting in Dallas, Dallas County, Texas.

## LIST OF INTERESTED PARTIES

**JUDGES:**                                                      **APPELLANT:**
Hon. Tammy Kemp                          Julio Cesar Villalba
Judge 204th Judicial District
Court
Dallas, Texas 76196

**TRIAL ATTORNEYS**
Prosecuting Attorneys:
Hector H. Garza and
Andrew H. Anagnostis
Dallas County District Attorney's Office
133 N. Riverfront Blvd, 9th Floor
Dallas, Texas  75207

Defense Attorneys:
Ramon Rincon
6060 North Central Expressway, St. 306
Dallas, Texas 75206

Jose P. Noriega
10300 North Central Expressway, St. 235
Dallas, Texas 75231

**APPELLATE COUNSEL:**
Mike Casillas, Assistant District Attorney
133 N. Riverfront Blvd, 10th Floor
Dallas, Texas  75207 Charles M. Mallin, Assistant

Ronald L. Goranson, Appellant's Attorney
2828 Routh Street, St. 675
Dallas, Texas 75201

Danny D. Burns, Appellate Counsel for Defense on PDR
115 North Henderson Street
Fort Worth, Texas  76102-1940

/s/ Danny D. Burns
DANNY D. BURNS

ii

# TABLE OF CONTENTS

LIST OF INTERESTED PARTIES..............................ii

TABLE OF CONTENTS......................................iii

TABLE OF CASES AND AUTHORITIES.........................iv

STATEMENT REGARDING ORAL ARGUMENT..................... v

STATEMENT OF THE CASE................................. 1

STATEMENT OF JURISDICTION.............................5

PROCEDURAL HISTORY................................... 5

POINTS FOR REVIEW.................................... 6

REASON FOR REVIEW NUMBER ONE......................... 7
       THE COURT OF APPEALS HAS DECIDED AN
       IMPORTANT QUESTION OF STATE AND
       FEDERAL LAW WHICH IS CONTRARY TO CASES
       FROM THIS HONORABLE COURT DEALING WITH
       THE STANDARD FOR REVIEW OF A DENIAL OF
       A REQUESTED SELF DEFENSE CHARGE.

REASON FOR REVIEW NUMBER TWO.........................13
       THE COURT OF APPEALS HAS DECIDED AN
       IMPORTANT QUESTION OF STATE LAW WHICH
       IS CONTRARY TO CASES FROM THIS
       HONORABLE COURT DEALING WITH THE
       GIVING OF A CHARGE ON THE LESSER
       INCLUDED OFFENSE OF MANSLAUGHTER.

CONCLUSION AND PRAYER................................17

CERTIFICATE OF SERVICE...............................19

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . .  19

APPENDIX (OPINION)

# TABLE OF CASES

CASES:

*Abdnor v. State*, 871 S.W.2d 726
    (Tex.Crim.App., 1994). . . . . . . . . . . . . . . 14

*Bell v. State,* 693 S.W.2d434
    (Tex.Crim.App., 1985). . . . . . . . . . . . . . . 15

Ferrel v. State, 55 S.W.3d 586
    (Tex.Crim.App, 2001). . . . . . . . . . . . . . . . 8

*Hayes v. State*, 728 S.W.2d 1987
    (Tex.Crim.App., 1987). . . . . . . . . . . . . vi,11

*Morales v. State*, 357 S.W.3d 1
    (Tex.Crim.App., 2011). . . . . . . . . . . v,10, 11

*Shaw* v. State, 243 S.W.3d 647
    (Tex.Crim.App., 2007). . . . . . . . . . . . . . . 8

## AUTHORITIES

Texas Constitution,
    Article 5, Section 5. . . . . . . . . . . . . . . 5

TEXAS PENAL CODE,
    Article 1.07(a)(43). . . . . . . . . . . . v,7,10-11
    §19.02. . . . . . . . . . . . . . . . . . . vii,14
    §19.04(a). . . . . . . . . . . . . . . . vii,14,15

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests the Court to grant oral argument in this case. The refusal of the trial court to grant Petitioner a charge on self defense is contrary to clearly established law by this Honorable Court. The Court of Appeals applied a standard of review based upon a Penal Code definition of a "reasonable belief" requiring a reasonable man standard of review. TEXAS PENAL CODE, Article 1.07(a)(43). This Honorable Court has consistently required that the belief that self defense is required must be viewed from the standpoint of the defendant alone. SEE: *Hayes v. State*, 728 S.W.2d 1987 (Tex.Crim.App., 1987) In this case, defense counsel objected to the failure to give a charge of self defense. The Court of Appeals rejected the point using the definition in the Penal Code for "Reasonable belief" rather than the standard required for self defense, which is viewing the evidence from the standpoint of the defendant alone. This Honorable Court in *Morales v. State*, 357 S.W.3d 1, 3 (Tex.Crim.App., 2011) emphasized that the reasonable belief required in a defense of a

v

third party, the self-defense standard applies that the defendant "may act against another in defense of a third person, provided he acted upon a reasonable apprehension of danger to such third person, as it appeared to him from his standpoint at the time". The Court of Appeals reliance on a reasonable man standard deprived the Petitioner of a proper charge on self-defense. Looking at the situation from Petitioner Villalba's standpoint; going to move his own car after the argument, the deceased, without further provocation travels a car length in distance and slams into Petitioner's vehicle, with the female in the offending car yelling "Run him.." would cause apprehension of death or serious bodily injury from the driver of the car, who still had the ability to run over Petitioner Villalba. No man is fast enough to out run a car. The situation demanded immediate action. This evidence justifies the jury's consideration of self-defense. The defense was entirely based upon Petitioner Villalba's right to defend himself against some trying to run over him. There is nothing in this evidence which negates the necessity of self-

defense.  The error was clear, objected to, and harmful.

The second reason for review involves the failure of the trial court to give a charge on the lesser included offense of manslaughter.  Manslaughter is recklessly causing the death of an individual.  TEXAS PENAL CODE, §19.04(a)  The charged offense of murder requires a showing that the individual intentionally or knowingly caused the death of another individual.  TEXAS PENAL CODE, §19.02.  The only difference between the two is the requisite mental state.  Manslaughter is a lesser included offense of murder.  Petitioner Julio Cesar Villalba was entitled to the charge before the jury.  The evidence showed that at the time Petitioner Julio Cesar Villalba fired what amounted to the fatal shots, he was randomly firing into the car.  The Court of Appeals opinion points out the evidence relied upon to show reckless conduct.  The Court of Appeals notes that Villalba relied on testimony from Perry that showed it was "one of them 'I don't care moments" and that he was shooting in the car like "he didn't give a damn who he hit."  (Opinion, p. 8)  Petitioner knew the Katisha Perry

vii

and Troy were in the car.  The evidence was more than a scintilla of evidence that Villalba did not intend to kill but was reckless in firing into the window. Petitioner Julio Cesar Villalba did not shoot Troy Fuller when he was right in front of him, instead he fired into the ground and into the air.  The evidence clearly raises a fact issue which could have resulted in a conviction for the lesser included offense.

The error was established in each instance and the harm is obvious.

Petitioner Julio Cesar Villalba was entitled to both a charge on self-defense as judged under the proper standard for review, the standpoint of the defendant at the time, and the lesser included offense of manslaughter.

This Honorable Court should grant review in order to address these issues.

## STATEMENT OF THE CASE

The Petitioner Mr. Julio Cesar Villalba was charged by indictment with the offense of murder. (R., p. 21) Mr. Julio Cesar Villalba pleaded not guilty. (R., p. 9) After a full trial starting on October 29, 2013 and ending on November 1, 2013, the jury convicted Petitioner Julio Cesar Villalba of murder and assessed his punishment at seventy (70) years in the Institutional Division of the Texas Department of Criminal Justice. (R., p. 9, 52, 59-60)

Petitioner timely and properly filed a Motion for New Trial which was denied and Petitioner Julio Cesar Villalba filed a notice of appeal on November 1, 2013.

The State called Raymond Fuller, the father of Tory Fuller. (R., Vol. 6, p. 17) He identified his son's photographs, both when his son was alive and one of him after his death. (R., Vol. 6, p. 22-23) Tory Fuller picked up Katisha Perry on August 11, 2012 at 4:00 in the morning. Tory and Katisha parked in front of a vacant lot just two houses down from where Katisha lived. (R., Vol 6, p. 29) Katisha said that Petitioner Julio Cesar

Villalba lived two houses down from her house. (R., Vol. 6, p. 29) She and Tory were "fooling around" in the back seat of the car. (R., Vol. 6, p. 37) Petitioner Julio Cesar Villalba started banging on the car window and saying "Get the ____ out in front of my house." (R., Vol. 6, p. 35) At first she did not notice that Villalba had a gun because it was in a zip lock bag and had a paper on it. (R., Vol. 6, p. 36) She said then Petitioner Villalba took the gun and knocked on the window again. Katisha then jumped over the seat and Tory began pulling up his clothes. Tory then exited the car and went to the driver's side of the vehicle. (R., Vol. 6, p. 37) Petitioner Julio Cesar Villalba again told Tory to get out from in front of his house. (R., Vol. 6, p. 40) Katisha told Petitioner that they were not in front of his house. (R., Vol. 6, p. 40) Katisha did not hear what was said next between Tory and Petitioner Villalba but she said Petitioner Villalba started shooting with a chreome handgun three or four times in the direction of Tory's feet. (R., Vol. 6, p. 37, 39-40, 42-43) At that point, Tory got into the driver's seat and Petitioner

Villalba started waling away.  (R., Vol. 6, p. 43-44) Katisha stated that Petitioner Julio Cesar Villalba came back to the car and shot four times into the car.  (R., Vol. 6, p.44, 47)  She said that when Tory was shot, hsi foot hit the gas pedal but the car was not in gear.  (R., Vol. 6, p. 45)  Katisha testified that Tory had done nothing to make Petitioner Villalba shoot him and that Tory did not have a weapon.  (R., Vol. 6, p.49) Petitioner Villalba ran, got into his vehicle and left the scene.  (R., Vol. 6, p. 50)  While Katisha was trying to unlock Tory's telephone, Petitioner Julio Cesar Villalba's mother and sister appeared.  (R., Vol. 6, p. 48)  Ruth Villalba, Petitioner Julio Cesar Villalba's sister call 911.  Katisha went her house and called 9211 and then returned to help Tory.  (R., Vol. 6, p. 52) Tory denied during cross-examination that Tory put the car into reverse and backed into Petitioner's vehicle. (R., Vol. 6, p. 62)  She admitted that she and Tory had parked in the same place and had verbal confrontations with Petitioner Julio Cesar Villalba each time.  (R., Vol. 6, p. 64)

Ruth Villalba testified that she saw her brother Julio Cesar Villalba standing outside the driver's side door of Tory Fuller's car and they were arguing, not loud but she hear them arguing. (R., Vol. 6, 200) While Petitioner Villalba was returning to his car so he could move it so Tory and Katisha could leave, she heard Katrina yell "Run him.." and Tory backed one car length into Petitioner's car and there was a bump "like a big hit." He hit Petitioner's car hard enough to move the car a little bit back. (R., Vol. 6, p. 200-202)

The Dallas Fire and Rescue paramedic Wes Southar testified that he went to the scene and saw a bullet hole in the vindow of the Lexus vehicle and a man was slumped over in the car; the girlfriend was in the passenger seat. (R., Vol. 6, p. 79) The paramedic noted that the man in the car had been shot in the neck and was "DOA". (R., Vol. 6, p. 78-81, 83)

## STATEMENT OF JURISDICTION

Jurisdiction is vested in this Honorable Court by the Texas Constitution, Article 5, Section 5 which directs that the Court of Criminal Appeals shall have final jurisdiction coextensive with the limits of the state, in all criminal cases of whatsoever grade, except for juvenile cases. Discretionary Review by the Court of Criminal Appeals is not a matter of right, but of sound judicial discretion.

## PROCEDURAL HISTORY

The Fifth Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion on March 31, 2015. No Motion for Rehearing was filed. The Petition for Discretionary Review was due to be filed on or before April 30, 2015. Petitioner's new attorney obtained an extension of time to file the Petition for Discretionary Review on or before June 1, 2015.

## POINTS FOR REVIEW

**POINT OF ERROR NUMBER ONE. THE TRIAL COURT'S REFUSAL TO SUBMIT ON THE LAW OF SELF-DEFENSE WAS HARMFUL ERROR.**

**POINT OF ERROR NUMBER TWO. THE TRIAL COURT'S REFUSAL TO SUBMIT A JURY CHARGE ON THE LAW OF TRHE LESSER INCLUDED OFFENSE OF MANSLAUGHTER WAS HARMFUL ERROR.**

**REASON FOR REVIEW NUMBER ONE. THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE AND FEDERAL LAW WHICH IS CONTRARY TO CASES FROM THIS HONORABLE COURT DEALING WITH THE STANDARD FOR REVIEW OF A DENIAL OF A REQUESTED SELF DEFENSE CHARGE.**

## THE OPINION

The Court of Appeals correctly stated that "A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief. (Opinion, p. 5) The Court of Appeals held that "the record does not contain evidece that Villalba reasonably believed deadly force was immediately necessary to protect himself." The Court of Appeals then referred to the Texas Penal Code definition of reasonable belief contained in Section 1.07(a)(42). The Court of Appeals then stated "Villalba did not testify during the guilt/innocence phase so the jury did not hear any testimony from him about whether ' Fuller's driving behavior caused him any fear or

apprehension.  Likewise, Ruth did not provide any such evidence.  However, even if Villalba thought Fuller intended to cause him harm, Villalba could have simply walked away."

The Court of Appeals found that "Viewing the evidence in the light most favorable to Villalba, he failed to meet his burden of showing that some evidence existed to support each element of his self-defense claim.  Shaw v. State, 243 S.W.3d 647 at 657 (Tex.Crim.App., 2007); Ferrel v. State, 55 S.W.3d 586 at 591 (Tex.Crim.App., 20010. Accordingly the trial court did not err in denying his requested instruction."

**LAW AND ARGUMENTS**

Petitioner established the minimum requirements of self-defense through the evidence presented by the State and the defense as to the actions of Troy Fuller which resulted in his death.  The Court of Appeals acknowledged that the Petitioner Julio Cesar Villalba presented more than a scintilla of evidence to raise the issue of self-defense.  The evidence reasonably shows that Troy Fuller, after Petitioner Julio Cesar Villalba walked away from

the argument, put his car in reverse, drove at least a car length backwards striking Petitioner Julio Cesar Villalba's vehicle, beside which Julio Cesar Villalba was standing, with the female passenger yelling "Run him". The jury could reasonably believed from this evidence that Troy Fuller intended to kill or seriously injure Petitioner Julio Cesar Villalba with Fuller's automobile. Under this testimony, Petitioner Julio Cesar Villalba had no opportunity safely to retreat. Mr. Villalba was attempting to walk away but Troy Fuller and his girlfriend Katisha Perry attempted to run him down. This probability is further justified when considering the testimony that Fuller and Perry had "parked" in that same location twice before and in each case an argument ensued. This time, Fuller and Perry intended to end the problem permanently. A rational jury could have so found. Had the defensive instruction of self-defense, raised by the evidence been provided to the jury to consider, Petitioner Julio Cesar Villalba could have been acquitted. The Court of Appeals statement that "there is no evidence Fuller drove his car in a manner intended or

capable of causing death or serious bodily injury" (Opinion, p. 5-6) is not supported by the evidence. A motor vehicle striking a human being, rather than another car, even at a relatively slow speed can break bones and kill an individual run over by the car. A vehicle striking another vehicle of several thousand pounds will stop whereas striking an individual as intended as the evidence supports, would simply run over individual, probably killing him should the wheel run over a vital part of the body.

There is no question but that manslaughter is a lesser included offense of murder. The only difference in the elements is the mental state. Under proper instructions for self-defense, the proper review is whether viewing the evidence from the standpoint of the defendant alone, there is evidence to justify the use of deadly force. SEE: *Morales v. State,* 357 S.W.3d 1 (Tex. Crim.App. 2011) The Court of Appeals, however, applied a standard of review based upon a Penal Code definition of a "reasonable belief" requiring a reasonable man standard of review. TEXAS PENAL CODE, Article

1.07(a)(43). This Honorable Court has consistently required that the belief that self defense is required must be viewed from the standpoint of the defendant alone. SEE: *Hayes v. State*, 728 S.W.2d 1987 (Tex.Crim.App., 1987) In this case, defense counsel made a timely oral objection to the failure to give a charge of self defense. The error was preserved and harm is clear since the only defense offered at trial was self-defense. The Court of Appeals rejected the point of error by using the definition in the Penal Code for "Reasonable belief" rather than the standard required for self defense, which is viewing the evidence from the standpoint of the defendant alone. This Honorable Court in *Morales v. State*, 357 S.W.3d 1, 3 (Tex.Crim.App., 2011) emphasized that the reasonable belief required in a defense of a third party, the same standard as required by the self-defense standard, requires that the defendant "may act against another in defense of a third person, provided he acted upon a reasonable apprehension of danger to such third person, as it appeared to him from his standpoint at the time". The Court of Appeals

reliance on a reasonable man standard deprived the Petitioner of a proper charge on self-defense. Looking at the situation from Petitioner Villalba's standpoint; going to move his own car after the argument, the deceased, without further provocation travels a car length in distance and slams into Petitioner's vehicle, with the female in the offending car yelling "Run him.." would cause apprehension of death or serious bodily injury from the driver of the car, who still had the ability to run over Petitioner Villalba. No man is fast enough to out run a car. The situation demanded immediate action. This evidence justifies the jury's consideration of self-defense. The defense in this case was entirely based upon Petitioner Villalba's right to defend himself against someone trying to run over him. There is nothing in this evidence which negates the necessity of self-defense. The error was clear, objected to, and harmful.

This Honorable Court should grant review in this case both to address the fact that Petitioner established his entitlement to a self-defense charge and also to address

the propriety of using a reasonable man standard to decide if the evidence shows that a particular defendant was reasonable in using deadly force when viewing the evidence from his standpoint alone.

**REASON FOR REVIEW NUMBER TWO. THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE LAW WHICH IS CONTRARY TO CASES FROM THIS HONORABLE COURT DEALING WITH THE GIVING OF A CHARGE ON THE LESSER INCLUDED OFFENSE OF MANSLAUGHTER.**

<u>**THE OPINION**</u>

The Fifth Court of Appeals held that because the evidence presented at trial did not establish manslaughter as a valid, rational, alternative to murder, the trial court did not err b y denying defense counsel's requested instruction. (Opinion, p. 9)

<u>**LAW AND ARGUMENTS**</u>

The trial court refused to give the Petitioner Julio Cesar Villalba a charge on the lesser included offense of manslaughter when the facts and circumstances clearly raised the issue and trial counsel timely objected to the

failure to charge on manslaughter. The presence of any harm, regardless of degree, is sufficient to require reversal in this circumstance. *Abdnor v. State*, 871 S.W.2d 726 (Tex.Crim.App., 1994) The Texas Penal Code defines manslaughter as recklessly causing the death of an individual. TEXAS PENAL CODE, §19.04(a) In this case, the charged offense of murder requires a showing that the individual intentionally or knowingly caused the death of another individual. TEXAS PENAL CODE, §19.02. The only difference between the two is the requisite mental state. Manslaughter is a lesser included offense of murder. In this case, Petitioner Julio Cesar Villalba was entitled to a charge on manslaughter before the jury based upon the evidence before the jury. The evidence showed Petitioner Julio Cesar Villalba intended no physical harm to either Fuller or Perry when he first approached their motor vehicle. Even when a gun was fired, it was fired into the air and into the ground. There was a clear intent to have them leave but there was no intent to harm. In fact, the evidence clearly shows that the Petitioner was going to his motor vehicle when

PAGE 14

the Fuller put the vehicle in reverse and Perry yelled "Run him" which signaled to any person that both Fuller and Perry intended to run down Petitioner Julio Cesar Villalba with his motor vehicle and was only stopped from doing so by the fact that in his drunken state, he struck Petitioner's motor vehicle instead. Firing into the window of the motor vehicle, even if it was only to scare or deter the driver, was reckless as defined by Texas Penal Code, §19.04(a). The evidence showed that at the time Petitioner Julio Cesar Villalba fired what amounted to the fatal shot, he was randomly firing into the car. The Court of Appeals opinion points out the evidence relied upon to show reckless conduct. The Court of Appeals notes that Villalba relied on testimony from Perry that showed it was "one of them 'I don't care moments" and that he was shooting in the car like "he didn't give a damn who he hit." (Opinion, p. 8) Petitioner knew that Katisha Perry and Troy were in the car. The evidence was more than a scintilla of evidence to support the fact that Villalba did not intend to kill anyone but was reckless in firing into the window knowing

that people were present. There was no shooting to kill but it is a rational view of the evidence that Petitioner Julio Cesar Villalba was instinctively responding to Fuller's attempt to run over him. The fact that Petitioner Julio Cesar Villalba did not shoot Troy Fuller when he was right in front of him supports a lack of intent to injure or kill anyone. Instead of trying to show anyone earlier, Petitioner Julio Cesar Villalba fired into the ground and into the air. The evidence clearly raises a fact issue which could have resulted in a conviction for the lesser included offense of manslaughter if the jury had been allowed to consider the totality of the evidence presented. Evidence from any source can raise the requirement for an instruction on a lesser included offense. *Bell v. State,* 693 S.W.2d434 at 473 (Tex.Crim.App., 1985)

The implication of the Court of Appeals that without the Petitioner Julio Cesar Villalba's testimony, the lesser included offense of manslaughter could never be raised is simply wrong. Any person confronted by another individual attempting to run over them with a motor

vehicle could be expected to respond by creating a warning that would deter further violent attempts to run over them. The jury had plenty of evidence to consider the lesser included offense of manslaughter. The trial court's refusal to allow that consideration deprived Petitioner Julio Cesar Villalba of a conviction for the lesser included offense of manslaughter.

This Honorable Court should grant review in order to address whether the lesser offense can be raised from the evidence without testimony from the defendant and whether Petitioner Julio Cesar Villalba established enough evidence to entitle him to that charge.

## CONCLUSION AND PRAYER

Petitioner Julio Cesar Villalba has presented two good reasons why this Honorable Court should grant review of the decision of the Fifth Court of Appeals decision affirming his case. This Honorable Court can grant review for either or both reasons. Petitioner Julio Cesar Villalba contends that the error in each instance was established and the harm is obvious.

Petitioner Julio Cesar Villalba was entitled to both

a charge on self-defense as judged under the proper standard for review, the standpoint of the defendant at the time, and was entitled to the lesser included offense of manslaughter under the evidence presented during the trial, including the prior relationship of the parties.

WHEREFORE, PREMISES CONSIDERED, Petitioner Julio Cesar Villalba requests this Honorable Court grant review on each of the issues raised herein, to order further briefing of the issues, and to grant Petitioner Julio Cesar Villalba a new trial with the proper jury instructions for self-defense and of a lessor included offense of manslaughter as is required by the law and the evidence herein.

Respectfully submitted;

/s/ Danny D. Burns

DANNY D. BURNS
Attorney for Petitioner Julio Cesar Villalba
115 N. Henderson Street
Fort Worth, Texas 76102-1940
817-870-1544 Facsimile 817-870-1589
dburnslaw@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing petition for discretionary review was served on the Honorable Mike Casillas by e-mail and on the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, by e-mail transmission on June 1, 2015.

_/s/ Danny D. Burns
DANNY D. BURNS

## CERTIFICATE OF COMPLIANCE

I certify that the Petition for Discretionary Review submitted herein complies with 9.4(i) of the Texas Rules of Appellate Procedure and state that the Petition for Discretionary Review was typed with WordPerfect6 in Courier New, 14 point font. The Word Count, excluding the caption, identify of the parties, and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service,

PAGE 19

certification, certificate of compliance, and appendix consisting of the opinion from the Fifth Court of Appeals, contains 2,124 words, contained in 22 paragraphs, in ninety-four (94) sentences on thirteen (13) pages.

Respectfully submitted;

_/s/ Danny D. Burns_____
DANNY D. BURNS
115 North Henderson Street
Fort Worth, Texas 76102-1940
(817) 870-1544
(817) 870-1589 fax
dburnslaw@sbcglobal.net



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01661-CR

**JULIO CESAR VILLALBA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1258991-Q**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Bridges

A jury convicted appellant Julio Cesar Villalba of murder and sentenced him to seventy-years' imprisonment. On appeal, he argues the trial court erred by refusing to submit charge instructions on self-defense and the lesser-included offense of manslaughter. He further contends the trial court erred during the punishment phase by refusing to submit a sudden passion instruction and by admitting a handgun. We affirm the trial court's judgment.

### Background

In the early morning hours of August 11, 2012, Tory Fuller and Katisha Perry were parked in front of a vacant lot on Perry's street. She lived two houses down from the vacant lot and Villalba lived next to the vacant lot on the other side. At the time, Villalba's car was parked in front of his home. If Perry and Fuller needed to leave, they would "have had to back up a little bit, but not a lot and just pull straight out."

Perry testified they were in the back seat of the car "doing girlfriend and boyfriend stuff" when Villalba knocked on the window with a gun. At first they did not notice the gun because it was in "like a Ziploc bag, but it had paper on it." But then he took it out and knocked on the window again. Villalba told them to "Get the eff out in front of my house," even though they were not parked in front of his house. Perry then climbed to the front passenger seat, and Fuller opened the back door and walked to the driver's side door. Perry said the men started talking, but she could not hear the conversation. Villalba then started counting and shooting towards Fuller's feet. Fuller jumped in the car, and Perry said she told Fuller, "come on, let's go to the store." Perry thought Villalba fired three or four shots at the ground.

According to Perry, Villalba then walked four or five steps away from the car, and she thought the situation had ended. However, Villalba turned around and started shooting at an angle into the car's front driver's side windshield. Perry described it as "one of them 'I don't care' moments" because Villalba was just shooting in the car like "he didn't give a damn who he hit." It was like "both of y'all can go."

Although Fuller had time to turn the car on, Perry testified Villalba started shooting before Fuller shifted the car into gear to leave. Villalba then fled the scene in his car.

When paramedics arrived, they found the car in park, the engine revving, and Fuller sitting in the driver's seat slumped over. Perry was covered with blood splatter.

One of the bullets struck Fuller in the neck and severed both his right and left carotid artery and his jugular vein. He died on the scene, and the medical examiner concluded the cause of death was a gunshot wound to the neck. Perry was not injured from the gunfire.

Francisco Gonzales, a crime scene analyst with the Dallas Police Department, testified scrape marks, consistent with someone shooting into the ground, were present on the cement. He observed three possible defects in the road near the scene.

Sergeant Leopold Gonzalez served as a detective on the case. He testified neither the murder weapon[1] nor Villalba's car were ever located. He further testified Villalba turned himself in three days after the crime.

Villalba's sister, Ruth, testified for the defense. She woke up around 3:20 a.m. on August 11, 2012 to yelling and arguing outside her home. She looked out her upstairs bedroom window and saw Fuller and Perry inside the front seat of the car and Villalba outside the driver's side door. She testified Villalba started walking back to move his car so Fuller and Perry could leave. As Fuller backed his car up, she heard Perry yell, "Run him." She was certain Fuller backed his car up because she saw reverse lights. She claimed Fuller hit Villalba's car, and "it moved a little bit back." When Fuller hit Villalba's car, Villalba was on the driver's side of his car. She testified Villalba did not pull a gun until after Fuller hit his car.

Ruth then saw Villalba walk towards the driver's side of Fuller's car, point the gun up, and fire two shots. Villalba then put the gun down by his side.

On cross examination, Ruth remembered telling a detective she woke up that morning and heard a woman say, "Okay, we're going to leave now." She also admitted she told Detective Gonzalez that Villalba first fired two shots up into the air. However, she did not see Villalba shoot into the windshield because she went to get her mother. She did, however, hear shots while she was getting her mother. When she came back, she then saw Villalba get into his car and leave.

After both sides rested, defense counsel requested an instruction on self-defense because "through Ruth's testimony, I think there - - hitting the car - - my client's car with the client being nearby, so he can have an apprehension of fear of being threatened by a deadly weapon, a vehicle." The trial court denied the request.

---

[1] During the punishment hearing, Villalba testified he took the gun apart and threw it in a pond.

Defense counsel also requested an instruction on the lesser-included offense of manslaughter. He argued manslaughter was raised through Perry's testimony "about his angular shooting," and because the car's windows were tinted, "it might be possible that, looking at it from the actor's standpoint, he could not see clearly inside the vehicle to see what bodies were where at the time of the firing." The trial court denied the request.

The jury found Villalba guilty of murder. The punishment phase then continued before the jury. The State introduced Villalba's prior convictions, which included two separate incidents of fleeing and evading arrest, two separate incidents of marijuana possession, and failure to ID. Villalba also testified and based on his testimony, defense counsel requested an instruction on sudden passion. The trial court denied the request. The jury sentenced Villalba to seventy years' confinement, and this appeal followed.

## Self-Defense

In his first issue, Villalba argues the trial court's refusal to instruct the jury on self-defense resulted in harmful error. The State responds nothing in the record raised the issue of self-defense; therefore, the trial court did not err in denying the requested instruction.

When reviewing jury charge error, we must first determine whether error actually exists in the charge, and if we find error, we determine whether it harmed the defendant. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). We review the trial court's decision not to include a defensive issue in the jury charge for an abuse of discretion. *Love v. State*, 199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West

–4–

2007). This law requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief. *Id.* at 209. On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

The defendant bears the burden of showing that some evidence exists to support each element of the defense. *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007). In this case, Villalba used deadly force when he shot Fuller with a gun because a gun is capable of causing death or serious bodily injury. *Trammell v. State*, 287 S.W.3d 336, 341 (Tex. App.—Fort Worth 2009, no pet.). Therefore, to be entitled to a self-defense instruction, Villalba was required to present some evidence demonstrating his reasonable belief that shooting the gun was immediately necessary to protect himself from Fuller's use or attempted use of deadly force. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a)(1) (West 2011).

Villalba relies on Ruth's testimony in which she stated Fuller backed into Villalba's car while he was standing nearby and "running a motor vehicle, a 'dangerous weapon,' at someone is an aggravated assault," from which he should be permitted to defend himself. However, Ruth's testimony does not establish that Villalba was justified in using deadly force to protect himself. While a car can be a deadly weapon if it is driven so as to endanger lives, it is not a deadly weapon per se. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Parrish v. State*, 647 S.W.2d 8, 10 (Tex. App.—Houston [14th Dist.] 1982, no pet.). In the present case, there is no evidence Fuller drove his car in a manner intended or capable of causing death or

–5–

serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2014) (defining "deadly weapon" as "anything that is in the manner of its use or intended use capable of causing death or serious bodily injury"). Ruth testified she heard the two men arguing. Then, as Fuller backed his car up, she heard Perry yell, "Run him." She claimed Fuller hit Villalba's car, and "it moved a little bit back." When Fuller hit Villalba's car, Villalba was on the driver's side of his car. When viewed in the light most favorable to Villalba, which includes consideration of Perry's "Run him" statement, Ruth's testimony does not establish Fuller made any threatening remark to Villalba or drove his car in a manner capable of causing death or serious bodily injury. Ruth did not testify Fuller accelerated backwards in an attempt to hit Villalba. Rather, she testified the impact moved Villalba's car "a little bit back."

Further, the record does not contain evidence that Villalba reasonably believed deadly force was immediately necessary to protect himself. A "reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42).

During the charge conference, defense counsel argued that because Villalba was standing near his car when Fuller allegedly backed up, "he [could] have an apprehension of fear of being threatened by a deadly a weapon, a vehicle." Villalba did not testify during the guilt/innocence phase so the jury did not hear any testimony from him about whether Fuller's driving behavior caused him to feel any fear or apprehension. Likewise, Ruth did not provide any such evidence. However, even if Villalba thought Fuller intended to cause him harm, Villalba could have simply walked away. The record is clear Fuller did not have a gun or any other deadly weapon in his possession when Villalba killed him. As such, grabbing a gun from his car and shooting into Fuller's windshield was not an immediately necessary response to protect himself from Fuller backing up his car near Villalba. *See, e.g., Trammell*, 287 S.W.3d at 341 (holding defendant was

–6–

not entitled to self-defense instruction despite decedent pointing a knife at defendant earlier in the evening and even if defendant thought decedent intended to cause him harm, defendant could have simply driven away from the scene; "shooting the gun was not an immediately necessary response").

Viewing the evidence in the light most favorable to Villalba, he failed to meet his burden of showing that some evidence existed to support each element of his self-defense claim. *Shaw*, 243 S.W.3d at 657; *Ferrel*, 55 S.W.3d at 591. Accordingly, the trial court did not err in denying his requested instruction. We overrule Villalba's first issue.

## Lesser-included Offense Instruction

In his second issue, Villalba argues the trial court erred by denying his request for an instruction on the lesser-included offense of manslaughter. The State responds Villalba was not entitled to such an instruction because there was no evidence he was guilty only of the lesser offense.

As previously stated, when reviewing jury charge error, we must first determine whether error actually exists in the charge, and if we find error, we determine whether it harmed the defendant. *Ngo*, 175 S.W.3d at 743. The determination of whether a defendant is entitled to a lesser-included offense instruction requires a two-step analysis: (1) whether the requested charge is for a lesser-included offense of the charged offense; and (2) whether there is evidence that supports giving the instruction to the jury. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011).

The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Id.* This is a question of law and is not dependent on the evidence produced at trial. *Id.* The second step of the lesser-included offense analysis is to determine if there is some evidence in the record that would permit a jury to rationally find that,

if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). The second step is a question of fact and is based on the evidence presented at trial. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012).

Both parties agree manslaughter is a lesser-included offense of murder; therefore, we focus our analysis on whether the evidence presented at trial would permit a jury to rationally find that, if Villalba is guilty, he is guilty only of manslaughter. The penal code defines manslaughter as recklessly causing the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). A person acts reckless with respect to circumstances surrounding his conduct when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care an ordinary person would exercise under all circumstances as viewed from the actor's standpoint. *Id.* Further, there must be some affirmative evidence from which a rational juror could infer that Villalba was aware of but consciously disregarded a substantial risk that death would occur as a result of his conduct. *Cavazos*, 382 S.W.3d at 385. While it is true the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense. *Id.* Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Id.*

Villalba again relies on testimony from Ruth and Perry to support his position. He quotes Perry's testimony in which she described the shooting as "one of them 'I don't care' moments" because Villalba was just shooting in the car like "he didn't give a damn who he hit." Villalba

also cites to Ruth's testimony in which she described Villalba getting the gun from his car, pointing the gun up, and firing two shots.

The evidence Villalba relies on does not affirmatively raise the lesser-included offense of manslaughter while negating an element of murder. Specifically, the evidence does not support that Villalba acted only recklessly when he killed Fuller. Perry explained how Villalba approached the car, banged on the window with a gun, and shot several times towards the ground when Fuller tried to get out of the car. Villalba then walked away before turning back around and shooting into the windshield. While Perry testified Villalba did not seem to care who he shot, she specifically stated Villalba knew both she and Fuller were inside the car, and he "pointed that gun at that window." Thus, this evidence indicates Villalba intended to shoot someone when he fired his gun into the windshield. His intentional conduct did not turn into a reckless act because he did not care which person he hit. The evidence does not support a finding of recklessness and does not rise to the level that would convince a rational jury to find that if Villalba was guilty, he was guilty only of the lesser-included offense of manslaughter. *See, e.g., Cavazos*, 382 S.W.3d at 385 (holding defendant was not entitled to lesser-included offense instruction because "pulling a gun, pointing it at someone, pulling the trigger twice, fleeing the scene, and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference defendant acted recklessly at the moment he fired the shots").

Because the evidence presented at trial did not establish manslaughter as a valid, rational alternative to murder, the trial court did not err by denying defense counsel's requested instruction. We overrule Villalba's second issue.

**Sudden Passion**

In his third issue, Villalba argues the trial court erred during the punishment phase by denying his request for a sudden passion instruction. The State responds the record does not support sudden passion or adequate cause.

During the punishment phase, a defendant may raise the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE ANN. § 19.02(d) (West 2011). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id*. § 19.02(a)(1). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of prior provocation." *Id*. § 19.02(a)(2). The defendant has the burden of production and persuasion with respect to the issue of sudden passion. *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013).

To justify a sudden passion instruction, the record must at least minimally support an inference that: (1) the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) he committed the murder before regaining his capacity for cool reflection; and (4) a causal connection existed between the provocation, passion, and homicide. *Id*. It does not matter that the evidence supporting the submission of a sudden passion instruction may be weak, impeached, contradicted, or unbelievable. *Id*. If the evidence raises the issue from any source, during either phase of trial,

then the defendant has satisfied his burden of production, and, if requested, the trial court must submit the issue in the jury charge. *Id.*

When reviewing jury charge error, we must first determine whether error actually exists in the charge, and if we find error, we determine whether it harmed the defendant. *Ngo*, 175 S.W.3d at 743. If the reviewing court determines the trial court erred by failing to submit a sudden passion instruction, only then does it analyze whether the error harmed the defendant. *Wooten*, 400 S.W.3d at 606.

Villalba testified that he had seen Fuller with a gun in the past. He also testified he felt scared and threatened by Fuller because of two previous incidents, one of which involved Fuller beating him up.

When questioned about the night of the shooting, Villalba explained he parked right behind Fuller's car and then knocked on the window. When no one answered, he went back to his car and retrieved the gun because "I just felt threatened that - - the first knocks didn't do nothing, and nobody's saying or doing anything so - -." When he knocked on the window with the gun, his intent was to get them to leave. "[M]y intentions were not to pull out the gun and try to do everything that occurred." Villalba said the two men started arguing, and he got angry when Fuller started saying things like, "I'm gonna get you back. . . he wanted to probably retaliate later."

Villalba admitted he realized what he was doing was wrong so he walked back to his car to move it. While he was standing beside his car with the door open, he testified Fuller "bumped" into his car. Although he first described it as a "threatening bump," he later admitted it only moved his car a little. He said, "it kind of frightened me a little that he was gonna come try to reverse faster." When he fired the shots into the windshield, he said it was "accidental"

–11–

and that the gun was "real sensitive." Afterwards, he thought he had missed, and he was hoping he had not shot Fuller. He ran away because he was scared and panicked.

Defense counsel requested a sudden passion instruction because of the previous interactions between Fuller and Villalba and because Fuller bumped Villalba's vehicle in a threatening manner. The trial court overruled the request because there was no evidence of adequate cause or that the shooting was accidental. We agree with the trial court's ruling.

First, we cannot consider any previous interactions between Villalba and Fuller because sudden passion must arise at the time of the offense and cannot result solely from former provocation. *Kelley v. State*, No. 05-09-01438-CR, 2012 WL 2628074, at \*7 (Tex. App.—Dallas July 6, 2012, pet. ref'd) (mem. op., not designated for publication). Second, Villalba did not provide any testimony that Fuller bumping into his car produced a "degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1) (defining "adequate cause"). Rather, Villalba testified the bump moved his car a little and it "kind of frightened me a little." Thus, we conclude the trial court did not err by finding there was no evidence of adequate cause.

Further, Villalba described the shooting as accidental, and he hoped he did not hit Fuller. Although an accident defense does not preclude a sudden-passion instruction, there must be some evidence to indicate that the appellant acted under the influence of sudden passion, even if that evidence is contrary to other evidence in the case. *McKinney v. State*, 179 S.W.3d 565, 571 (Tex. Crim. App. 2005). The record contains no such evidence.

Accordingly, the trial court properly denied Villalba's request for a sudden passion instruction. We overrule his third issue.

**Admission of Evidence During Punishment**

In his final issue, Villalba asserts the trial court abused its discretion by admitting a handgun during the punishment hearing. Specifically, he contends that because no one saw him with the handgun during the commission of the extraneous offense, "there is no way that a jury could rationally find that the Appellant was criminally responsible for possessing the handgun." The State responds the trial court acted within its discretion in admitting the handgun, and even if the trial court erred, Villalba was not harmed.

We review a trial court's decision to admit punishment evidence under an abuse of discretion. *Davis v. State*, 68 S.W.3d 273, 282 (Tex. App.—Dallas 2002, pet. ref'd). The Texas Code of Criminal Procedure permits trial courts to admit evidence deemed relevant to sentencing, including evidence of other crimes or bad acts. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014). During punishment, relevant evidence is that which assists the fact finder in determining the appropriate sentence given the particular defendant in the circumstances presented. *Davis*, 68 S.W.3d at 282–83. When a proper objection is made, the trial court has the responsibility to determine the threshold issue of whether an extraneous offense is relevant. *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.). Then the jury, as the exclusive judge of the facts, is to determine whether or not the State has proved the extraneous offense beyond a reasonable doubt. *Id.* The trial court satisfies its initial responsibility by making a determination that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *Id.* This threshold determination is not a finding by the court that the State has proved an extraneous offense beyond a reasonable doubt, but instead a finding that sufficient evidence exists from which a jury could reasonably so find. *Id.*

Deputy Tim Allman testified that on the evening of November 30, 2011, he initiated a traffic stop after he saw a car driving without its headlights. Villalba was the driver of the car. When Deputy Allman got out of his car, he dropped his flashlight and when he leaned over to pick it up, Villalba drove off. Deputy Allman pursued the car through a neighborhood. Villalba eventually stopped his car in front of a house, got out, and ran away. As Deputy Allen chased Villalba, he noticed Villalba reaching his hands in the front pockets of his hoodie, "like he was messing with something as he was running." Deputy Allman thought Villalba had a gun so he stopped chasing him. Villalba ran behind a fence into a backyard, and Deputy Allman radioed for back up. As he talked to the dispatcher, Villalba reappeared with his hands up.

When Deputy Gray arrived as back up, Deputy Allen already had Villalba in custody. Deputy Allen shared his suspicion that Villalba threw something in the backyard so Deputy Gray searched the area. He found a fully loaded magazine in Villalba's backyard and a gun in the back of the next door residence. Although Deputy Gray admitted he found no direct evidence linking the gun to Villalba, he saw fresh footprints in the dew on the grass in the area where the magazine was found. He further testified the magazine matched the gun.

Based on this testimony, evidence supported the conclusion that Villalba possessed and then discarded the gun prior to Deputy Allen arresting him. Accordingly, the trial court did not abuse its discretion by determining the jury could find beyond a reasonable doubt that Villalba possessed the gun. *Arzaga*, 86 S.W.3d at 781. Villalba's fourth issue is overruled.

## Conclusion

Having overruled Villalba's issues, the judgment of the trial court is affirmed.

Do Not Publish
TEX. R. APP. P. 47
131661F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JULIO CESAR VILLALBA, Appellant

No. 05-13-01661-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1258991-Q.
Opinion delivered by Justice Bridges.
Justices Fillmore and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 31, 2015.

–16–